JUDGE KAPLAN

08 CV 4899

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
ELEANOR ("RONNIE") BEHRINGER,

              Plaintiff,

      vs.

LAVELLE SCHOOL FOR THE BLIND AND
FRANK SIMPSON,

             Defendants.

- - - - - - - - - - - - - - - - x



**COMPLAINT AND JURY DEMAND**

**JURY TRIAL DEMANDED**

### NATURE OF THE ACTION AND THE PARTIES

1. This is an action against two Defendants ("Defendants"): Lavelle School For The Blind ("Lavelle" or the "School") and Frank Simpson, Superintendent of Lavelle.

2. This is a case about a 17-year employee of Lavelle who was unlawfully discriminated against, retaliated against and discharged after she disclosed to her most recent supervisor, Frank Simpson, that she is a recovering alcoholic and after she sought protected leave to care for her ailing father.

3. Plaintiff's claims include, among other items, unlawful discrimination, unlawful harassment, unlawful retaliation, and unlawful employment practices, in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 et seq., the Family and Medical Leave Act of 1993 (the "FMLA"), 29 U.S.C. § 2601 et seq., the New York State Human Rights Law (the "NYSHRL"),

N.Y. Exec. L. § 290 et seq. and the New York City Human Rights Law, (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.

4.    Plaintiff Eleanor ("Ronnie") Behringer ("Plaintiff" or "Ms. Behringer") is a resident of Norwalk, Connecticut.

5.    Defendant Lavelle is an entity with a business address in the Bronx, New York.

6.    Defendant Frank Simpson is an employee of Lavelle with a business address in the Bronx, New York.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over Plaintiff's claims pursuant to federal law, including without limitation the ADA, 42 U.S.C. § 12101 et seq., the FMLA, 29 U.S.C. § 2617, and 28 U.S.C. §§ 1331, 1343, 1367 and 2201.

8.    Venue is proper in this district pursuant to federal law, including without limitation the ADA, 42 U.S.C. § 12101 et seq., the FMLA, 29 U.S.C. § 2617, and 28 U.S.C. § 1391.

9.    Plaintiff filed a timely charge of discrimination, harassment and retaliation with the United States Equal Employment Opportunity Commission ("EEOC").

10.    Plaintiff requested a right to sue letter.  In March 2008, the EEOC issued a Notice Of Right To Sue letter.

11.    Plaintiff has mailed a copy of this Complaint to the New York City Commission Of Human Rights and the New York City Corporation Counsel.

12.  Plaintiff has satisfied all of the statutory prerequisites to filing this action with this Court.

13.  Plaintiff seeks an award of appropriate relief.

## FACTS

14.  Ms. Behringer was employed by Lavelle for approximately 17 years, from 1990 through February 28, 2007, when she was unlawfully discharged.  Her final position was lower school Principal.  Lavelle has a web site at www.lavelleschool.org.

15.  Ms. Behringer was qualified for her position with Lavelle.  During Ms. Behringer's employment with Lavelle, she established a track record of outstanding job performance.

16.  Ms. Behringer also has excellent experience and outstanding credentials, reflected in various documents, including among others, her resume and various certificates.

17.  Ms. Behringer is a recovering alcoholic and a member of Alcoholics Anonymous.  Ms. Behringer requires ongoing treatment for her alcoholism.  She receives ongoing treatment from Alcoholics Anonymous and is a member of Alcoholics Anonymous.

18.  In January 1993, Ms. Behringer, then a teacher at Lavelle, was hospitalized and on disability leave for several months for alcoholism and related medical conditions.  At the time, Ms. Behringer suffered from an addiction to and dependence on alcohol.  Her alcoholism is an impairment that substantially limited one or more major life activities, including working.

-3-

19.   In May 1993, Ms. Behringer was discharged from the hospital and returned to work at Lavelle in the Fall of 1993. She was subsequently promoted to Program Supervisor for the 1994 school year.  Since her discharge from the hospital in May 1993, Ms. Behringer has been and is a recovering alcoholic.

20.   Lavelle was aware of Ms. Behringer's hospitalization, medical condition and disability.  In fact, in 1993, Sister Angelus Healy (then Principal of Lavelle) and Sister Louis Marie Baxter (then Superintendent of Lavelle) visited Ms. Behringer at the hospital.  Over the years, various representatives of Lavelle were made aware of Ms. Behringer's disability.  Upon information and belief, Lavelle had documents reflecting her disability.

21.   As a matter of law, Ms. Behringer has a "disability." Notably, Ms. Behringer, a recovering alcoholic, has an undisputed history and record of alcoholism that previously substantially limited her major life activities, including working.

22.   Over the years, Lavelle issued written performance evaluations to Ms. Behringer, stating that her overall job performance was "excellent" or "met expectations."

23.   During Ms. Behringer's employment with Lavelle, Lavelle repeatedly reappointed Ms. Behringer and gave her raises.

24.   During Ms. Behringer's employment with Lavelle, Ms. Behringer received correspondence praising her performance.

-4-

25.   In May 2001, Lavelle issued an evaluation to Ms. Behringer stating, among other items:

> a.   "She is a conscientious and dependable person";
>
> b.   "Ronnie has met the on-going challenge of serving as principal at Lavelle";
>
> C.   "Ms. Behringer is an effective principal who fosters relationships with her peers, the students and their families"; and
>
> d.   "It has been a great pleasure working with Ronnie and watching her develop into a great (leader) principal in such a challenging environment".

26.   In or about the Fall of 2001, Lavelle hired Frank Simpson as Superintendent.  Mr. Simpson succeeded Sister Angelus Healy and he became Ms. Behringer's direct supervisor.

27.   Defendant Simpson reported to Lavelle's Board of Trustees, the head of which was and is Brother James Kearney.

28.   Ms. Behringer was nominated for the 2001 National Association of Private Schools for Exceptional Children "Executive of the Year Award."

29.   On or about January 11, 2002, Lavelle issued a memorandum to Ms. Behringer stating, among other items: "Overall, your work rating thus far this year is excellent and the school is very fortunate to have you as a key administrator."

30.   In August 2002, Lavelle issued a letter to Ms. Behringer praising her for her outstanding job performance and giving her a raise of $5,000 retroactive to September 1, 2001.

31.   In January 2005, Lavelle issued an evaluation to Ms. Behringer giving her an overall rating of "Met Expectations."

32.   During 2005, Ms. Behringer exercised her legal right to take protected leave under the FMLA to care for her ailing father.  Mr. Simpson, who was Ms. Behringer's direct supervisor, discriminated against and retaliated against Ms. Behringer for doing so.  In November 2005, Ms. Behringer received a memorandum dated November 23, 2005 from Mr. Simpson, that raised false allegations about her FMLA leave and violated her rights under the FMLA.  For example, Mr. Simpson falsely accused Ms. Behringer of abusing her FMLA leave when she participated in a triathlon <u>on a Saturday</u> (November 5, 2005) during her FMLA leave period.

33.   Ms. Behringer opposed, objected to and complained regarding same by, among other items, a written memorandum that Ms. Behringer submitted to Mr. Simpson dated December 15, 2005. Ms. Behringer's actions were protected by the FMLA.

34.   In January 2006, Lavelle asked Ms. Behringer to submit a self-evaluation and she did so.  Mr. Simpson then issued a performance evaluation to Ms. Behringer raising false criticisms of her job performance, defaming her, and falsely alleging that her performance was "below expectations."  Ms. Behringer's job

-6-

performance was, in fact, exemplary.  Mr. Simpson did so as an act of discrimination, harassment and retaliation.

35.  On or about January 12, 2006, Ms. Behringer submitted a written complaint to Mr. Simpson regarding the January 2006 evaluation.  Mr. Simpson told Ms. Behringer that the evaluation would be destroyed, but apparently retained the document.

36.  In February 2006, Ms. Behringer again took protected FMLA leave to care for her ailing father and, on February 28, 2006, he died.  Mr. Simpson was advised of same.  Mr. Simpson, in a further act of discrimination and retaliation, demanded that Ms. Behringer provide him with a death certificate for her father, under the guise that he needed that document to support her bereavement leave.  Ms. Behringer complied with the request.

37.  On or about April 12, 2006, Lavelle issued a revised evaluation to Ms. Behringer with higher performance ratings. Lavelle also issued a memorandum to Ms. Behringer praising her and reappointing her for the 2006-2007 school year, stating:

> "Based on your job performance, professionalism, and commitment to providing excellent educational services to Lavelle School Students, you are reappointed for the 2006-07 school year."

38.  In or about the Spring of 2006, Ms. Behringer was preparing to testify for Lavelle in an arbitration brought by Elizabeth Duffy, a former Teacher Assistant at Lavelle and a

union member ("Duffy arbitration").  Ms. Duffy was aware of Ms. Behringer's disability and Ms. Behringer was concerned that Ms. Duffy would raise that issue during the Duffy arbitration.

39.  Ms. Behringer attended several meetings to prepare for her testimony in the Duffy arbitration.  These meetings were attended by Vincent D'Andrea, Esq., who was Lavelle's attorney, Mr. Simpson, Lorrie Nanry (pre-school Principal at Lavelle) and/or Diane Tucker (upper school Principal at Lavelle).

40.  During these meetings, Ms. Behringer told Mr. D'Andrea that she is a recovering alcoholic and a member of Alcoholics Anonymous.  Mr. Simpson was present when Ms. Behringer disclosed her disability to Mr. D'Andrea and Mr. Simpson heard Ms. Behringer's statements regarding her disability.  Accordingly, by the Spring of 2006, Mr. Simpson indisputably knew that Ms. Behringer has a disability.  In addition to discussing her disability with Mr. D'Andrea and Mr. Simpson, Ms. Behringer also discussed her disability with Ms. Nanry and Ms. Tucker.

41.  Mr. Simpson unlawfully sought to terminate Ms. Behringer's employment because of her disability and because she had sought FMLA leave to care for her father.  Within one year after Ms. Behringer told Mr. Simpson that she is a recovering alcoholic, and after she sought FMLA leave, Defendants unlawfully discharged Ms. Behringer based upon false accusations of

unacceptable behavior. Defendants did so notwithstanding Ms.
Behringer's 17-year track record of outstanding job performance.

42.  During 2006 and 2007, and before unlawfully terminating
Ms. Behringer, Mr. Simpson engaged in various acts of unlawful
discrimination, harassment and retaliation against Ms. Behringer,
based on her disability and exercise of protected
statutory rights, to compel her resignation from Lavelle.

43.  For example, during staff meetings held in the Summer
of 2006 (on or about July 26, August 2 and August 4), Mr. Simpson
screamed, pounded his fists, and verbally abused Ms. Behringer,
causing her to cry.  He then verbally abused her for crying.  The
next time Mr. Simpson saw Ms. Behringer was in September 2006 at
or about the beginning of the school year.  At that time, Mr.
Simpson maliciously said "Oh, I see you are here.  After the
Summer I thought you would quit."  Ms. Behringer replied that she
had no intention of quitting.

44.  For example, at Lavelle's Christmas party in December
2006, Mr. Simpson, aware that Ms. Behringer is a recovering
alcoholic and has a disability, maliciously harassed her because
of her disability, saying "Can I get you a drink?"  Ms. Behringer
declined.  This did not surprise Mr. Simpson, because he knew she
is a recovering alcoholic.

45.  For example, on or about January 3, 2007, Mr. Simpson
gave Ms. Behringer a frivolous "warning" in a further act of

discrimination, harassment and retaliation.  As soon as Ms.
Behringer received this baseless "warning," she went to Mr.
Simpson's office, where personnel files were stored, and asked to
review her personnel file.  Maureen Lizarazo, Administrative
Assistant to Mr. Simpson, subsequently told Ms. Behringer that
Mr. Simpson was "out" searching for her personnel file.  Mr.
Simpson then told Ms. Behringer that her file had been "lost."

46.  Mr. Simpson's response made no sense, since personnel
files were supposed to be kept under lock and key at all times.
In fact, Ms. Behringer was unaware of any other occasion in which
Lavelle had alleged that an employee's personnel file was "lost."
She believed that Lavelle had intentionally destroyed or removed
her personnel file in an ongoing effort to set her up for
unlawful termination and eliminate evidence supporting her
claims.  Indeed, Ms. Behringer's personnel file was thick because
of her numerous achievements and accolades over the years.  Mr.
Simpson told Ms. Behringer that she could submit documents in her
possession in an effort to recreate her personnel file.

47.  On January 5, 2007, Lavelle issued a memo to Ms.
Behringer alleging that Tom Hanney, Security Director, would
investigate her "missing" personnel file.  Lavelle never issued
any subsequent documents to Ms. Behringer regarding any alleged
investigation and, upon information and belief, no investigation
was conducted.  On January 9, 2007, Ms. Behringer submitted to

Lavelle various documents that she had in her possession in an effort to reconstruct her personnel file.

48.  Finally, on February 28, 2007, the anniversary of the death of Ms. Behringer's father, Defendants' unlawful conduct against Ms. Behringer culminated.

49.  On February 28, 2007, Defendants suddenly and unlawfully discharged Ms. Behringer's employment.  Defendants issued a memorandum to Ms. Behringer, dated February 28, 2007. Among other items, the termination memorandum falsely stated: "Your behavior in the work environment is unacceptable."

50.  Defendants' allegation regarding Ms. Behringer's "behavior" was completely baseless.  Moreover, the termination of Ms. Behringer's employment violated Lavelle's procedures for addressing alleged deficiencies in employee job performance.

51.  Ms. Lizarazo and Mr. Hanney were present at the time of Ms. Behringer's discharge.  Mr. Hanney escorted Ms. Lavelle to her office and then out of the building, which was extremely demeaning, degrading and defamatory to her reputation.

52.  Defendants intentionally discharged Ms. Behringer on the anniversary of the death of her father to cause her additional pain, suffering and harm.

53.  After Ms. Behringer separated from Lavelle, Sister Angelus Healy, who had retired as Superintendent of Lavelle in or

about 2001, gave Ms. Behringer a letter of recommendation recognizing her outstanding job performance at Lavelle.

54.  Defendants unlawfully discriminated against Ms. Behringer regarding compensation, terms, conditions and privileges of employment, harassed her, and unlawfully discharged her employment, because of her disability, within the meaning of applicable law, and because Ms. Behringer exercised her protected rights under the FMLA to care for her ailing father.  Defendants unlawfully retaliated against Ms. Behringer for objecting to, opposing and complaining about unlawful discrimination and harassment and for engaging in protected activities.

55.  Defendants unlawfully discriminated against Ms. Behringer, harassed her, retaliated against her, and discharged her, because of her disability, in violation of the FMLA, and because she engaged in protected activities.

56.  Defendants' conduct constituted unlawful discrimination, harassment and retaliation.  Defendants unlawfully discriminated against Plaintiff regarding compensation, terms, conditions and privileges of employment, and employment opportunities, harassed her, retaliated against her, and unlawfully discharged her, in violation of applicable law.

57.  Defendants' proffered reason for the challenged conduct was a pretext for unlawful discrimination, harassment and retaliation.

-12-

58.  Defendants' unlawful discrimination and harassment was severe and pervasive, adversely affected the terms, conditions and privileges of Plaintiff's employment with Lavelle, resulted in adverse tangible employment actions, and created a hostile, offensive and abusive work environment.

59.  In addition, tolerance of unlawful discrimination and harassment described herein was a term and condition of Plaintiff's employment, and Plaintiff suffered adverse tangible employment actions because she refused to acquiesce to that conduct and protested such conduct.  Accordingly, Plaintiff has been the victim of "quid pro quo" harassment.

60.  Plaintiff engaged in protected activities within the meaning of applicable law.  Plaintiff opposed, objected to and complained about unlawful conduct.  However, Defendants failed to take appropriate remedial action and failed to put an end to the unlawful conduct and it continued throughout her employment.

61.  Defendants knew or should have known of the unlawful discrimination, unlawful harassment and unlawful retaliation against Plaintiff, did nothing to stop such unlawful conduct, and that conduct continued.

62.  Defendants failed to exercise reasonable care to prevent and correct unlawful discrimination, unlawful harassment and unlawful retaliation against Plaintiff, and Defendants

ratified, approved, directed, supported, allowed and/or condoned such unlawful conduct.

63.   Defendants did not properly investigate and did not take appropriate remedial action in response to Plaintiff's opposition to, objections to and/or complaints about unlawful discrimination and harassment, and failed to stop the unlawful conduct.

64.   Defendants ignored Plaintiff's opposition to, objections to and/or complaints about unlawful discrimination and harassment and Defendants continued to engage in such unlawful conduct.   Defendants unlawfully retaliated against Plaintiff for engaging in protected activity and opposing, objecting to and/or complaining about unlawful discrimination and harassment.

65.   Defendants have not subjected employees who are outside of Plaintiff's protected classes and/or who did not engage in protected activities to the same unlawful discrimination and retaliation and have treated such employees more favorably.

66.   Mr. Simpson had actual and apparent authority over Plaintiff and also had significant decision-making, managerial, executive and supervisory authority, including without limitation authority to make employment decisions, to hire and discharge employees and to make and/or recommend employment and personnel decisions.

67. Defendants authorized unlawful discrimination, unlawful harassment and unlawful retaliation against Plaintiff and the employees who engaged in such unlawful conduct were unfit and Defendants were reckless and/or negligent in employing them.

68. Upon information and belief, Defendants have engaged in continuing violation of law and a pattern and practice of unlawful discrimination, harassment, and retaliation.

69. Defendants' unlawful conduct was intentional and was carried out with malice or reckless indifference to Plaintiff's protected rights to be free from unlawful discrimination, harassment and retaliation.

70. As a result of Defendants' unlawful conduct, Plaintiff has suffered, and continue to suffer, among other items, substantial damages. Plaintiff is entitled to the damages and other relief sought herein and seeks all available damages and relief under applicable law.

71. Upon information and belief, Brother Kearney and the Board of Trustees knew or should have known of the unlawful discrimination, harassment and retaliation towards Ms. Behringer. Upon information and belief, Brother Kearney and the Board of Trustees condoned such unlawful conduct and failed to exercise reasonable care to prevent and correct the discrimination, harassment and retaliation towards Ms. Behringer.

-15-

72.   Defendants are liable for their unlawful conduct against Plaintiff.

### COUNT ONE

### (Americans With Disabilities Act)

73.   Plaintiff repeats and realleges every allegation in paragraphs 1 through 72 of this Complaint with the same force and effect as though fully set forth herein.

74.   This Count is brought under the ADA, 42 U.S.C. § 12101 et seq. and reference is made to the ADA in its entirety, and to 42 U.S.C. §§ 12102, 12111, 12112, 12117 and to 42 U.S.C. 2000e-5.

75.   At all relevant times, Plaintiff was an employee and person within the meaning of the ADA.

76.   At all relevant times, Lavelle was and is an employer within the meaning of the ADA.

77.   Under the ADA, the term disability means, with respect to an individual: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.  At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the ADA, because: (1) she has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) she has a record of such

-16-

an impairment; and/or (3) she is regarded as having such an impairment.  See, e.g., 42 U.S.C. § 12102(2).

78.  Defendants committed unlawful employment practices and discriminated against Plaintiff because of a disability, regarding compensation, terms, conditions and privileges of employment, and employment opportunities, and unlawfully discharged her because of a disability.  Defendants unlawfully retaliated against Plaintiff and unlawfully discharged her for engaging in protected activity, in violation of the ADA.

79.  Defendants unlawfully discharged Plaintiff in violation of the ADA.

80.  Defendants' conduct, as alleged herein, constituted unlawful employment practices, unlawful discrimination on the basis of a disability, and unlawful retaliation, in violation of the ADA.

81.  Defendants' unlawful conduct was intentional and was carried out with malice or reckless indifference to Plaintiff's protected rights to be free from unlawful discrimination, harassment and retaliation.

82.  As a result of Defendants' unlawful employment practices and unlawful discrimination, Plaintiff has suffered and continue to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages and bonuses; (ii) lost back pay; (iii) lost front pay; (iv) lost

benefits; (v) lost interest; (vi) lost pension and retirement earnings; and (vii) attorneys' fees and costs. Plaintiff is entitled to reinstatement and to recover monetary and other damages, punitive damages, interest (pre-judgment and post-judgment), and attorneys' fees and costs, from Lavelle, under the ADA.

83.  As a result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, among other items, lasting and irreparable injury, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation. Plaintiff is entitled to recover damages for such injuries from Lavelle.

## COUNT TWO

### (FMLA)

84.  Plaintiff repeats and realleges every allegation in paragraphs 1 through 83 of this Complaint with the same force and effect as though fully set forth herein.

85.  This Count is brought under the FMLA, 29 U.S.C. § 2601 et seq. and reference is made to the FMLA in its entirety and to 29 U.S.C. §§ 2611, 2612, 2614, 2615, and 2617.

86.  At all relevant times, Plaintiff was an eligible employee and Plaintiff was and is a person within the meaning of the FMLA.

87.   Lavelle was and is an employer within the meaning of the FMLA.  Mr. Simpson was and is an employer within the meaning of the FMLA, which defines the term employer to include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."

88.   At all relevant times, Plaintiff was qualified for her position with Lavelle.

89.   Plaintiff's father had a serious health condition within the meaning of the FMLA.

90.   Plaintiff was entitled to FMLA leave to care for her father's serious health condition and attempted to exercise her FMLA rights, and was entitled to use FMLA leave.

91.   Under the FMLA, Plaintiff was entitled to utilize her FMLA leave without any adverse employment action or adverse changes to the terms and conditions of her employment.

92.   Defendants unlawfully discharged Plaintiff because she exercised her FMLA rights and Defendants unlawfully discharged Plaintiff in violation of the FMLA.

93.   Defendants unlawfully interfered with, restrained and/or denied Plaintiff the exercise of her rights or the attempt to exercise her rights under the FMLA, in violation of the FMLA.

94.   Defendants unlawfully discriminated against and unlawfully discharged Plaintiff for exercising her rights or attempting to exercise her rights under the FMLA and/or for

opposing practices made unlawful by the FMLA, in violation of the FMLA.

95.   Defendants' proffered reasons for the challenged conduct are a pretext for unlawful employment practices, unlawful discrimination and unlawful retaliation, in violation of the FMLA.

96.   Defendants' unlawful employment practices, unlawful discrimination and unlawful retaliation violated the FMLA.

97.   As a result of Defendants' unlawful employment practices and unlawful discrimination, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages and bonuses; (ii) lost back pay; (iii) lost front pay; (iv) lost benefits; (v) lost interest; (vi) lost pension and retirement earnings; and (vii) attorneys' fees and costs.  Plaintiff is entitled to reinstatement and to recover monetary and other damages, liquidated damages, interest (pre-judgment and post-judgment), and attorneys' fees and costs, from Defendants, under the FMLA.

## COUNT THREE

### (NYSHRL)

98.   Plaintiff repeats and realleges every allegation in paragraphs 1 through 97 of this Complaint with the same force and effect as though fully set forth herein.

99.  This Count is brought under the NYSHRL, N.Y. Exec. L. §
290 et seq. and reference is made to the NYSHRL in its entirety
and to N.Y. Exec. L. §§ 292(1), 292(5), 292(6), 292(21), 292(21-
e), 296, 296(1)(a), 296(1)(e), 296(3), 296(3)(a), 296(3-a)(c),
296(6), 296(7), and 297(9).

100. At all relevant times, Lavelle and Mr. Simpson each was
and is an employer and a person within the meaning of the NYSHRL.
Also, Mr. Simpson was and is an employee and agent within the
meaning of the NYSHRL.

101. At all relevant times, Plaintiff was an employee and a
person within the meaning of the NYSHRL.

102. At all relevant times, Plaintiff had a disability
within the meaning of the NYSHRL, because, among other items:
(1) she has a physical, mental or medical impairment resulting
from anatomical, physiological, genetic or neurological
conditions which prevents the exercise of a normal bodily
function or is demonstrable by medically accepted clinical or
laboratory diagnostic techniques; (2) she has a record of such an
impairment; and/or (3) she was and is perceived or regarded as
having such an impairment.

103. Plaintiff was able to perform the functions of her job
with or without a reasonable accommodation, as that term is
defined under the NYSHRL.

104. Defendants' conduct, as alleged herein, constituted unlawful discriminatory practices, unlawful discrimination and unlawful harassment on the basis of disability, as defined by the NYSHRL, in violation of the NYSHRL.

105. Defendants' conduct, as alleged herein, constituted unlawful retaliation in violation of the NYSHRL.

106. At all relevant times, Mr. Simpson had decision-making power at Lavelle, had power to make personnel decisions, supervised and controlled terms and conditions of employment, and had power to do more than simply carry out personnel decisions made by others at Lavelle.

107. Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYSHRL.

108. Defendants are liable for the unlawful conduct.  Mr. Simpson is individually and personally liable for his unlawful conduct both as an "employer" under NYSHRL § 296(1) and under the "aiding and abetting" provision of NYSHRL § 296(6).

109. As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages and bonuses; (ii) lost back pay; (iii) lost front pay; (iv) lost benefits; (v) lost interest; (vi)

lost pension and retirement earnings; and (vii) attorneys' fees and costs.

110. As a further result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.

111. Plaintiff is entitled to reinstatement and to recover monetary damages and other damages and relief from Defendants under the NYSHRL.

### COUNT FOUR

### (NYCHRL)

112. Plaintiff repeats and realleges every allegation in paragraphs 1 through 111 of this Complaint with the same force and effect as though fully set forth herein.

113. This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq. and reference is made to the NYCHRL in its entirety and to N.Y.C. Admin. Code §§ 8-102(1), 8-102(5), 8-102(16), 8-102(17), 8-102(18), 8-107, 8-107(1), 8-107(1)(a), 8-107(6), 8-107(7), 8-107(15), and 8-502.

114. At all relevant times herein, Lavelle and Mr. Simpson each was and is an employer and a covered entity within the meaning of the NYCHRL.

115. At all relevant times herein, Plaintiff, Mr. Simpson and Lavelle each was and is was a person within the meaning of the NYCHRL.  Also, Mr. Simpson was and is an employee and agent within the meaning of the NYCHRL.

116. At all relevant times, Plaintiff had a disability within the meaning of the NYCHRL, because, among other items: (1) she has a physical, medical, mental or psychological impairment, as that term is defined under the NYCHRL; (2) she has a history or record of such an impairment; and/or (3) she was and is perceived or regarded as having such an impairment.

117. Plaintiff was able to perform the functions of her job with or without a reasonable accommodation, as that term is defined under the NYCHRL.

118. Defendants' conduct, as alleged herein, constituted unlawful discriminatory practices, unlawful discrimination and unlawful harassment on the basis of disability, as defined by the NYCHRL, in violation of the NYCHRL.

119. Defendants' conduct, as alleged herein, constituted unlawful retaliation in violation of the NYCHRL.

120. Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination and harassment, and retaliation.

-24-

121. At all relevant times, Mr. Simpson had decision-making power at Lavelle, had power to make personnel decisions, supervised and controlled terms and conditions of employment, and had power to do more than simply carry out personnel decisions made by others at Lavelle.

122. Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

123. Defendants are liable for the unlawful conduct. Mr. Simpson is individually and personally liable for his unlawful conduct both as an "employer" under NYCHRL § 8-107(1) and under the "aiding and abetting" provision of NYCHRL § 8-107(6).

124. As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages and bonuses;  (ii) lost back pay; (iii) lost front pay; (iv) lost benefits; (v) lost interest; (vi) lost pension and retirement earnings; and (vii) attorneys' fees and costs.

125. As a further result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering,

inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.

126. Plaintiff is entitled to reinstatement and to recover monetary damages and other damages and relief, punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment as follows:

(A)  On Count One, enter a judgment declaring the acts and practices of Lavelle to be in violation of ADA;

(B)  On Count One, enjoin Lavelle from discriminating against and retaliating against and taking reprisals against Plaintiff under ADA;

(C) On Count One, award Plaintiff reinstatement of employment with Lavelle with full seniority status, promotions, salary increments and increases, bonuses and benefits, to the same extent that she would have received but for Defendants' unlawful discrimination, unlawful employment practices and unlawful retaliation;

(D)  On Count One, award Plaintiff as against Lavelle the amount of wages, salary, employment benefits and other compensation, including without limitation back pay, front pay, bonuses, benefits, pension and retirement earnings, and interest

lost (pre-judgment and post-judgment) as a result of Defendants' discrimination, retaliation and reprisals;

(E)  On Count One, award Plaintiff as against Lavelle consequential damages for losses resulting from Defendants' acts of discrimination, retaliation and reprisals;

(F)  On Count One, award Plaintiff as against Lavelle compensatory damages for emotional distress, suffering, humiliation and damage to Plaintiff's reputation and career;

(G)  On Count One, award Plaintiff as against Lavelle punitive damages;

(H)  On Count One, award Plaintiff as against Lavelle the cost of this action, together with reasonable attorneys' fees, and litigation/legal costs;

(I)  On Count Two, enter a judgment declaring the acts and practices of Lavelle to be in violation of the FMLA;

(J)  On Count Two, enjoin Lavelle from discriminating against Plaintiff, violating Plaintiff's rights under the FMLA, and retaliating against Plaintiff, and direct Lavelle to place Plaintiff in the position she would have occupied but for Defendants' unlawful discrimination, unlawful employment practices and unlawful retaliation;

(K) On Count Two, award Plaintiff reinstatement of employment with Lavelle with full seniority status, promotions, salary increments and increases, bonuses and benefits, to the

same extent that she would have received but for Defendants'
unlawful discrimination, unlawful employment practices and
unlawful retaliation;

(L) On Count Two, award Plaintiff as against Lavelle the
amount of wages, salary, employment benefits and other
compensation, including without limitation back pay, front pay,
bonuses, benefits, pension and retirement earnings, and interest
lost (pre-judgment and post-judgment) as a result of Defendants'
unlawful discrimination, unlawful employment practices and
unlawful retaliation;

(M)  On Count Two, award Plaintiff as against Lavelle
liquidated damages;

(N)  On Count Two, award Plaintiff as against Lavelle the
cost of this action, together with attorneys' fees;

(O)  On Count Three, enter a judgment declaring the acts and
practices of Defendants to be in violation of the NYSHRL;

(P) On Count Three, award Plaintiff reinstatement of
employment with Lavelle with full seniority status, promotions,
salary increments and increases, bonuses and benefits, to the
same extent that she would have received but for Defendants'
unlawful discrimination, unlawful employment practices and
unlawful retaliation;

(Q)  On Count Three, award Plaintiff the amount of wages, salary, employment benefits and other compensation, including without limitation back pay, front pay, bonuses, benefits, pension and retirement earnings, and interest lost as a result of Defendants' unlawful discrimination, unlawful harassment and unlawful retaliation;

(R)  On Count Three, award Plaintiff consequential damages for losses resulting from Defendants' unlawful discrimination, unlawful harassment and unlawful retaliation;

(S)  On Count Three, award Plaintiff compensatory damages for, among other items, injury, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses;

(T)  On Count Four, enter a judgment declaring the acts and practices of Defendants to be in violation of the NYCHRL;

(U) On Count Four, award Plaintiff reinstatement of employment with Lavelle with full seniority status, promotions, salary increments and increases, bonuses and benefits, to the same extent that she would have received but for Defendants' unlawful discrimination, unlawful employment practices and unlawful retaliation;

(V)  On Count Four, award Plaintiff the amount of wages, salary, employment benefits and other compensation, including without limitation back pay, front pay, bonuses, benefits, pension and retirement earnings, and interest lost as a result of Defendants' unlawful discrimination, unlawful harassment and unlawful retaliation;

(W)  On Count Four, award Plaintiff consequential damages for losses resulting from Defendants' unlawful discrimination, unlawful harassment and unlawful retaliation;

(X)  On Count Four, award Plaintiff compensatory damages for, among other items, injury, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses;

(Y)  On Count Four, award Plaintiff punitive damages;

(Z)  On Count Four, award Plaintiff the cost of this action, together with reasonable attorneys' fees; and

(AA) Grant Plaintiff such other and further relief as may be necessary and proper.

## JURY DEMAND

Plaintiff demands a jury trial for all issues triable.

-30-

Dated:    May 27, 2008
          New York, New York

                        GOLDBERG & FLIEGEL LLP

              By:       *Kennett A. Goldberg*
                        Kenneth A. Goldberg(KG0295)
                        Goldberg & Fliegel LLP
                        60 East 42nd Street, Suite 3421
                        New York, NY 10165
                        (212) 983-1077
                        Attorneys for Plaintiff