UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELEANOR ("RONNIE") BEHRINGER,<br><br>        Plaintiff,<br><br>    -against-<br><br>LAVELLE SCHOOL FOR THE BLIND and<br>FRANK SIMPSON,<br><br>        Defendants. | Civil Action No.: 08-4899 (JGK-THK) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS AND/OR
FOR SUMMARY JUDGMENT**

DATED: April 23, 2010

KELLEY DRYE & WARREN LLP
Jean Y. Park (jpark@kelleydrye.com)
101 Park Avenue
New York, New York 10178
(212) 808-7800

Attorneys for Defendants
Lavelle School for the Blind and Frank Simpson

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ........................................................................................................2

    A.    Background ...........................................................................................................2

          1.    The Parties ..............................................................................................2

          2.    Plaintiff's Alleged Disability.................................................................3

          3.    Lavelle's Pertinent Employment Policies..............................................4

    B.    Plaintiff Initial Year Working with Simpson (2001-02 School Year)...................5

    C.    The October 27, 2003 Reorganization and Plaintiff's Demotion ........................6

    D.    Plaintiff's Initial Performance as Lower School Principal (2003/04 School Year) ....................................................................................................................7

    E.    Behringer's 2005 FMLA Leave ...........................................................................7

    F.    Behringer's January 2006 Performance Evaluation and April 2006 Reevaluation ........................................................................................................8

    G.    Behringer's June 23, 2006 "Disclosure" to Simpson ...........................................10

    H.    Simpson's Conduct During July and August 2006 Staff Meetings....................10

    I.    Lavelle's December 2006 Holiday Party.............................................................10

    J.    The February 13th Incident Leading to Plaintiff's Discharge .............................11

ARGUMENT.......................................................................................................................13

    I.    THE EVIDENTIARY FRAMEWORK DISCRIMINATION, RETALIATION OR HARASSMENT ............................................................14

          A.    The Complaint Fails to State a Claim for Disability-Based Retaliation................................................................................................14

          B.    Plaintiff Cannot Establish a Claim for Disability-Based Harassment .........................................................................................15

          C.    Plaintiff Cannot Establish A Claim for Disability Discrimination and Cannot Be Refuted as Pretext For Disability Discrimination...........18

    II.    THE RECORD EVIDENCE DOES NOT SUPPORT  PLAINTIFF'S FMLA CLAIMS ........................................................................................20

          A.    Plaintiff Cannot, As a Matter of Law, Establish That   Defendants Interfered With Her FMLA Rights.........................................................20

**TABLE OF CONTENTS**
**(continued)**

Page

B.  Plaintiff Cannot, as a Matter of Law, Establish a   Claim for Retaliation or Discrimination Under the FMLA ......................................21

CONCLUSION ...................................................................................................................23

NY01/PARKJE/1398753.3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELEANOR ("RONNIE") BEHRINGER,<br><br>Plaintiff,<br><br>-against-<br><br>LAVELLE SCHOOL FOR THE BLIND and<br>FRANK SIMPSON,<br><br>Defendants. | Civil Action No.: 08-4899 (JGK-THK)<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF<br>DEFENDANTS' MOTION TO DISMISS<br>AND/OR FOR SUMMARY JUDGMENT** |

## PRELIMINARY STATEMENT

Plaintiff Ronnie Behringer is a former employee of Lavelle School for the Blind ("Lavelle" or the "School") who was discharged on February 28, 2007, after several years of inconsistent work performance, for publicly accusing a male job coach and his male student of ogling an allegedly exposed, vulnerable female student, for falsely reporting this alleged gawking, and then, to justify her extreme behavior, concocting an outlandish tale that this female student was, in full view of several people, "naked from the waist down rolling on the floor while being administered a rectal suppository."

Plaintiff's conduct, for which she remains smugly unrepentant to this day, jeopardized the reputations (and jobs) of fellow employees, negatively impacted the welfare and safety of a vulnerable population of students, destroyed her credibility and made her unfit to continue in her position as a leader and administrator of Lavelle.

The decision maker, Superintendent Frank Simpson, had compelling reasons to fire Behringer, and her allegations that Simpson otherwise harassed, discriminated and retaliated against her because she told him she was a recovering alcoholic in June of 2006, and because she took FMLA leave in 2005, are a fabrication of shabby construction.

The record here is devoid of any evidence, circumstantial or otherwise, to support an inference that Simpson – himself a cancer survivor and someone who has devoted his entire professional life to serving the disabled -- was motivated by discriminatory or retaliatory intent in any of his dealings with plaintiff.

With respect to plaintiff's FMLA claim, plaintiff admits that no one interfered with her ability to take FMLA, that she took all of the FMLA time that she needed, and that no one attempted to restrain or dissuade her from doing so.  The only alleged "violation" to which plaintiff points is Simpson's request that she account for her use of FMLA leave after legitimate questions were raised about whether plaintiff was using her time appropriately.

Plaintiff's disability discrimination, retaliation and harassment claims are equally empty. First, Behringer neither alleges nor did she engage in any "protected activity" in relation to her alleged disability, with is a condition antecedent to any retaliation claim.  Second, the record is devoid of any incidents of harassment based on plaintiff's alleged status as a "recovering alcoholic" and the 4 neutral incidents to which plaintiff points do not support a finding of "severe and pervasive" harassment.

Finally, plaintiff was fired for legitimate, nondiscriminatory reasons unrelated to her alcoholism or her FMLA leave; to wit, an incident of gross misconduct, remote in time from either the November 2005 FMLA leave or the June 23, 2006 disclosure of disability.  Defendants implore the Court to put an end to this frivolous action and grant the Motion in its entirety.

## STATEMENT OF FACTS

**A.    Background**

**1.    The Parties.**  Lavelle is small, not-for-profit, multi-cultural school that exists to serve children who are blind and have multiple disabilities.  The School is located in the Bronx, is regulated by the New York State Education Department ("NYSED"), and has approximately

125 employees. (Simpson Aff. ¶ 3.)[1]  Behringer began working for the School as a 3rd grade teacher in September 1990, was promoted to Program Director in 1994, to Principal in 1997, and then demoted in November 2003 to her final position as Principal of the Lower School. (216, 220, 377, 383-84; Compl. ¶ 14.)[2]

Simpson is the School Superintendent and has served Lavelle in this role since June 2001. As Superintend, Simpson was responsible for supervising plaintiff from June 2001 until February 28, 2007. (Def. 56.1 ¶ 11.)[3]

**2.      Plaintiff's Alleged Disability.**  Behringer was diagnosed as an alcoholic in 1984, and, after undergoing treatment for one month at a rehabilitation center, maintained sobriety for 9 years. (Def. 56.1 ¶ 1.)  In January 1993, while employed at Lavelle, Behringer had a relapse, but she was able to control her drinking enough so it did not impact her work at Lavelle. (*Id.* at 2.)  She went out on a leave of absence at the end of January 1993 and returned to work in September 1993. (*Id.* at ¶¶ 4, 9.) Disability benefit forms submitted to Lavelle by plaintiff did not reflect medical treatment for alcoholism or any related condition. (*Id.* at ¶ 4.) The completed annual staff health forms plaintiff submitted to Lavelle between 2003 and 2007 did not indicate that plaintiff was a recovering alcoholic, had a history of alcohol abuse or suffered from any physical or mental impairments, restrictions or limitations of any kind. (*Id.* at ¶ 5.)

Plaintiff's recovering alcoholism does not prevent her from running, working out or participating in marathons and triathlons. It did not prevent Behringer from applying for and taking, in 2005, praxis exams to qualify as a teacher in Connecticut. It did not impact plaintiff's

---

[1]    Numbers prefixed by "Simpson Aff. ¶__" refer to paragraphs in the accompanying Affidavit of W. Frank Simpson, sworn to on April 23, 2010.

[2]    Numbers without prefix refer to transcript pages from plaintiff's deposition, copies of which are annexed as **Exhibit 2** to the accompanying Declaration of Jean Y. Park in support of the Motion (the "Park Declaration"). Numbers prefixed by "Compl. ¶ __" refer to paragraphs in plaintiff's complaint, a copy of which is annexed as **Exhibit 1** to the Park Declaration.

[3]    Numbers prefixed by "Def. 56.1 ¶  __" refer to paragraphs in Defendants' Rule 56.1 Statement of Undisputed Material Facts, dated April 23, 2010.

ability to testify at an arbitration hearing in June 2006 and assist Lavelle's labor attorney with contract negotiations. (Def. 56.1 ¶¶ 6-9.)  After September 1993, Behringer never reported any physical or mental limitations due to her status as a recovering alcoholic. (*Id.* at ¶ 9.)  The only "treatment" she requires for this alleged condition is attending Alcoholics Anonymous ("AA") meetings. (Park Decl. ¶ 7; Park Decl. Ex. 5..)

### 3.    Lavelle's Pertinent Employment Policies.

**Attendance/Punctuality.**  Every Lavelle employee, including its administrators, is required to punch in and out of a time clock.  Every Lavelle employee, including its administrators, is required to be punctual.  3 or more incidents of tardiness in a single pay period triggers a written warning.  Employees who have 3 or more incidents of tardiness in 2 consecutive pay periods are automatically suspended.   Employees who commit the following infractions are subject to discharge: (i) more than 3 suspensions in a given School year; (ii) 24 days late during any consecutive 6-month period, or (iii) 6 incidents of lateness during the initial 6 months of employment for new hires. Failure to swipe in or out counts as an incident of lateness. (Def. 56.1 ¶¶ 10; Simpson 35-36.)[4]

**Progressive Discipline.**  Lavelle has no policy or practice of progressive discipline in cases of employee misconduct. (Def. 56.1 ¶ 84.) Those who engage in misconduct are, and have been, summarily discharged by Simpson. (*Id.* at ¶ 84.)  Prior February 28, 2007, Simpson summarily fired a teacher for using a thumbtack to discipline a child and discharged a secretary who refused to perform an assignment. Since plaintiff's discharge, Simpson has summarily fired a teacher who used a chair to restrain a child and a certified occupational therapy assistant for making an unwanted advance on another employee. (Simpson Aff. ¶ 92.)  None of these employees were disabled or either requested or took FMLA leave. (*Id.* at 93.)

---

[4]    Numbers prefixed by "Simpson __" refer to transcript pages from the January 25, 2010 deposition of W. Frank Simpson, copies of which are annexed as **Exhibit 3** to the Park Declaration

**B.      Plaintiff Initial Year Working with Simpson (2001-02 School Year)**

When Simpson began working at Lavelle, he found the School to be disorganized and instructionally deficient. Student grouping, both in classrooms and the cafeteria, was inappropriate, with high-functioning students mixed indiscriminately with low-functioning students. Modified dormitory rooms were being used as classrooms with inadequate space and no access to fire exits. There were no computers and the playground was poor. Student individualized education plans ("IEPs") were not compliant with NYSED requirements for children with multiple disabilities. Many teacher assistants and paraprofessionals at Lavelle were not certified, including plaintiff and her Program Directors, Diane Tucker and Lorrie Nanry. These compliance issues were detailed in a December 1997 report issued to Lavelle by the NYSED. (232-33; Simpson Aff. ¶¶ 4-7; Simpson Aff. Ex. A.)

Simpson made it his priority in his initial year to bring the School into compliance, terminate non-performing employees, and to get all necessary employees certified. (Simpson Aff. ¶ 7.) On August 11, 2001, he fired 4 teaching assistants, none of whom was disabled or had requested or taken FMLA leave at any time. (Def. 56.1 ¶ 12.)  In September 2001, Simpson removed PPS Director, Adriane Horwitz from plaintiff's supervision after Horwitz complained to Simpson about Behringer. (*Id.* at 13.)

Plaintiff describes Simpson as coming in "like gang-busters" and making a lot of "really good changes," such as launching a Pre-School program and redecorating the School. (253, 260-61; Simpson Aff. ¶ 7.) She also found Simpson to be a "very demanding boss," who could be "erratic" and "explode in anger." (262, 267-70, 274-76, 355, 459-60; Park Decl. Ex. 4 at P0406.) For example, in early 2002, Simpson scolded Behringer, telling her that she shouldn't be "in the trenches." (Def. 56.1 ¶ 14.) He also wrote Behringer up for excessive tardiness. (*Id.* at ¶ 16.)

However, Simpson also commended Behringer for her work, reappointed her in April

2002 as Principal for the 2002/03 School year and supported a salary increase and certification award for plaintiff in August of 2002. (Def. 56.1 ¶¶ 15, 21-22.)

At some point in their initial year working together, Simpson came to believe that plaintiff was a recovering alcoholic based on comments that Behringer made to him about how she "used to drink, but didn't drink anymore," her mention of going to "meetings," and personal information that Behringer shared about family members who struggled with alcohol. Simpson also heard rumors about Behringer's 1993 relapse. (Def. 56.1 at ¶ 19.) Plaintiff herself "feels certain" that Simpson knew her status as early as August 2001. (*Id.*)

Simpson considered the relapse "ancient history" and did not think plaintiff's recovering alcoholism had any bearing on her job at Lavelle. (*Id.* at 20.)

**C.    The October 27, 2003 Reorganization and Plaintiff's Demotion**

Simpson experienced problems with Behringer's work performance in the 2002/03 School Year. Her attendance and punch card compliance continued to be atrocious and she was resistant to Simpson's initiatives to implement the 4410 Pre-School/UPK program, as well as various curriculum and class changes. (Simpson Aff. ¶¶ 29-31.) On October 7, 2003, Simpson gave Behringer a performance evaluation noting deficiencies in her collegiality/collaboration, punctuality, and support for the Pre-School/UPK program. (Def. 56.1 ¶ 23.) Both Nanry and Tucker reported difficulties working with plaintiff. (Def. 56.1 ¶ 24.)

Behringer's performance vis-à-vis that of her Program Directors, Nanry and Tucker, influenced Simpson's decision to reorganize the School to create 3 separate programs: the Pre-School, the Lower School and the Upper School. (Def. 56.1 ¶ 25.) Simpson demoted Behringer to the position of Principal of the Lower School, which reduced the scope of her work responsibilities by 2/3rds, and promoted Nanry to Principal of the Pre-School and Tucker to Principal of the Upper School. (*Id.* at ¶¶ 25-26.) As Lower School Principal, Behringer's salary

was reduced and she moved to the 10-month School schedule, which required her to take her vacations during School recesses. (Simpson Aff. ¶ 34.)

**D.     Plaintiff's Initial Performance as Lower School Principal (2003/04 School Year)**

With the exception of punctuality and time card punch compliance, Behringer performed well in her new role as Lower School Principal.  On January 6, 2005, Simpson gave plaintiff a favorable evaluation covering the September 2003 through December 2004 period. (Simpson Aff. ¶ 38; Simpson Aff. ¶ G.)

**E.     Behringer's 2005 FMLA Leave**

In April of 2005, plaintiff's father, John McGlone, was diagnosed with lung cancer. Behringer traveled to Virginia, where he was receiving medical care, to be with him. In May 2005, she applied for and was granted intermittent FMLA leave to care for her father while he was undergoing treatment in Virginia. (Def. 56.1. ¶¶ 30-31.)

Behringer was out on FMLA leave from: (i) May 2 to May 13, 2005; (ii) May 31 – June 7, 2005 and (iii) October 11 – October 17, 2005. (Def. 56.1 ¶ 32.)  Nanry and Tucker covered for Behringer when she was absent, and no one discouraged, dissuaded, or restrained her from taking this intermittent leave from work.  No one interfered with these leaves or harassed plaintiff for taking such leave. (*Id.* at ¶¶ 32, 36.)

Indeed, in October of 2005, Simpson changed School policy so employees could use sick time to cover FMLA leaves. Behringer benefited from this policy change. (*Id.* at ¶ 33.)

In November 2005, Behringer took FMLA leave for 2.5 weeks and flew down to Grand Bahama Island, where her father lived.  Simpson did not interfere with, dissuade or restrain Behringer from taking this leave in November nor did he harass or otherwise interfere with her FMLA rights while she was out. (*Id.* at ¶ 34.)  This trip happened to coincide with the annual Conchman Triathlon, an event Behringer and her family members repeatedly participated in

prior to the time plaintiff converted to a 10-month School calendar work schedule.[5]   Knowing plaintiff was in the Bahamas, Nanry and Tucker, as well as Controller, Teresa Welsh, complained to Simpson that Behringer was misusing FMLA to participate in the triathlon and insisted he investigate. Simpson initially demurred, but then found plaintiff's race results posted on the Internet. (*Id.* at ¶¶ 35-37.)

When Behringer returned to work on November 21, 2005, Simpson questioned her about her activities while out on FMLA leave. Behringer refused to give Simpson the information he requested. Simpson did not pursue the matter further and took no disciplinary action against Behringer for refusing to provide the information he requested. (Def. 56.1 ¶¶ 38-40.)

Behringer did not take or need any FMLA after November 2005. (*Id.* at ¶ 41.)

**F.    Behringer's January 2006 Performance Evaluation and April 2006 Reevaluation**

On January 11, 2006, Simpson issued annual performance evaluations to the Principals, covering the period January 2005-January 2006. (Def. 56.1 ¶ 42.)  Simpson had began preparing these evaluations in the fall of 2005 by collecting data and paperwork on each of the Principals and then reviewing their prior ratings and comparing their relative performance. (*Id.* at ¶ 43.)

Simpson's assessment of Behringer's work performance during this period was that it was terrible, both on an absolute and relative basis. (Simpson Aff. ¶ 61.) He gave Behringer an overall rating of "below expectations" and assessed her as "below expectations" or "significantly below expectations" in several individual categories. (Def. 56.1 ¶ 44.)

For example, he rated plaintiff "significantly below expectations" in the category of telephone use and personal calls because Behringer had abused School policy both in her use of and time on personal calls. (Def. 56.1 ¶ 47; Simpson Aff. ¶ 62.)  The problem was brought to

---

[5]    In 2004, Simpson had approved plaintiff's request to participate in this race even though plaintiff was on the 10-month work schedule.

Simpson's attention  by the Assistant Controller, Allison Halloran, who noticed increased long distance and international telephone charges generated by Ronnie.  Halloran gave Simpson copies of the monthly telephone bills to review, and it was at that time that Simpson discovered the excessive amount of time that Behringer had been spending on personal calls during working hours. (Simpson Aff. ¶¶ 63-64.)  Between September 2004 and August, 2005, Behringer logged in over 22 hours in personal calls during working hours. The other Principals' call activity was incidental. (*Id.* at ¶ 64.)  Behringer was also again excessively tardy during this period, which only compounded her lack of availability. (Simpson Aff. ¶ 66.)

Simpson also rated Behringer "significantly below expectations" in the area of "professional interaction with peers." (Park Decl. Ex. 30.)  An example of plaintiff's poor performance in this category was when she did not consult the other Principals in annual scheduling for the 2005/06 School year. (Def. 56.1 ¶ 45.)

Simpson rated Behringer "significantly below expectations" in "team member and team leader skills." (Park Decl. Ex. 30 at P0291.)  An example of plaintiff's poor performance in this area was when, in the spring or fall of 2005, Behringer falsely told "Margo," an occupational therapist, that Simpson was forcing the School to be out of compliance. (Def. 56.1 ¶ 46. )

He rated plaintiff "below expectations" in the area of "creativity, innovation and commitment to positive change." (Park Decl. Ex. 30 at P0291.)  An example of plaintiff's poor performance in this category was her resistance to and failure to implement a program, launched in the fall of 2005, called "universal tangible cues," for blind and non-verbal students.  An outside consultant from Hunter College responsible for spearheading this program told Simpson that plaintiff was not committed to implementing this program. (Def. 56.1 ¶ 49.)

Simpson had multiple discussions with plaintiff about her January 11th performance evaluation, to provide clarification and specific examples.  On January 19, 2006, Behringer

requested a reevaluation and Simpson agreed to give her one. He also agreed to change a rating in plaintiff's January 11, 2006 performance evaluation and to include a positive addendum regarding plaintiff's work on MOVE. (Def. 56.1 ¶ 50.)

On April 12, 2006, Simpson gave plaintiff a new evaluation, to which she had no objections, and reappointed her for the 2006-07 School year. (Def. 56.1 ¶ 51.)

**G.      Behringer's June 23, 2006 "Disclosure" to Simpson**

On June 23, 2006, during a labor arbitration hearing, plaintiff told Simpson and the School's attorney, Vincent D'Andrea, Esq., that she was a recovering alcoholic. Simpson did not express any surprise and responded by saying, "So what's that got to do with it?" Nanry, who was at the hearing as well, believed that Simpson already knew that Behringer was a recovering alcoholic. Neither Nanry nor Tucker noticed any change in Simpson's behavior toward Behringer after this disclosure. (Def. 56.1 ¶¶ 52-53.)

**H.      Simpson's Conduct During July and August 2006 Staff Meetings**

During staff meetings with his Principals on July 26, 27, 31 and August 2, 2006, Simpson became frustrated over a host of issues, including scheduling and functional vision assessments and berated Behringer, Nanry and Tucker. (Def. 56.1 ¶ 54.) Nanry and Tucker deny that plaintiff was "singled out" in any way at these meetings. (*Id.* at ¶ 55.)

In September 2006, on the very first day of school, as plaintiff was entering the building, Simpson make a remark that he was surprised to see plaintiff back at work. Simpson said the same thing to Nanry and Tucker. (Def. 56.1 ¶ 56.)

**I.      Lavelle's December 2006 Holiday Party**

In December 2006, Simpson asked plaintiff and other employees whether he could get them drinks during a Lavelle holiday party. Nanry, Tucker and Welsh understood Simpson was acting as the host at this holiday party. (Def. 56.1 ¶ 57.)

-10-

J.      **The February 13th Incident Leading to Plaintiff's Discharge**

On February 13, 2007, plaintiff became involved in an incident in the School gym involving "Destiny," a female student in the Lower School. Also present were: (i) the School nurse, Susan Kiley; (ii) Destiny's teacher, Natasha Mousami; (iii) the gym teacher, Karen Gerweck, and (iv) a job coach, Paco Secada ("Paco"), who was there with students, "Orlando G" and "David G", preparing to go to a job site. (Def. 56.1 ¶ 59.)

Behringer claims that she entered the gym in order to assist and claims that she saw Paco and Orlando G "both looking at Destiny's ass" and that she had to tell Paco to "please" back away with his student. (Def. 56.1 ¶ 60.)

Behringer then spoke with Gary Wier, the Transition Coordinator and Paco's supervisor, who was also in the gym. She told Wier that "Destiny's pants were down, her rear end was showing, and Paco was standing with a student much too close."  She told Wier that it was "pretty outrageous, actually, the student's rear end was showing, and Paco did not move the student out of the line of vision." She told Wier "It did look like Destiny's rear end was showing to the point where it looked like she was getting a suppository." (Def. 56.1 ¶¶ 61-62.)

Wier did not believe Paco did anything wrong and felt Behringer's behavior created an atmosphere of stress and anxiety for him, Paco and his students.  He told Paco to leave the gym with the students in order to avoid further conflict. (Def. 56.1 ¶ 63.)   Later that day, Paco complained to Wier, both verbally and in writing, about plaintiff's treatment and her false accusation that he was "gawking" at Destiny. (*Id.* at ¶ 64.)

The following day, Wier sent Behringer an e-mail, advising her that he had spoken with Paco. Behringer responded by thanking Wier and telling him that no further action was necessary. (Def. 56.1 ¶ 65.)  Wier then told Tucker, his immediate supervisor, about Behringer's behavior. He complained that Behringer was inappropriate and unprofessional and told Tucker

that Behringer had screamed at Paco for not leaving the gym while a female student was having a tantrum and Behringer claimed that the student was having a suppository. (Def. 56.1 ¶ 23.)

Tucker became concerned about the suppository report and questioned the School nurse, Susan Kiley. Kiley denied administering a suppository to Destiny and told Tucker that Behringer had flown off the handle and "please" was not a word plaintiff used when addressing Paco. (*Id.* at ¶ 67.)  This caused Tucker to speak again to Wier to confirm where he had heard about the suppository.  Wier said it was from Behringer. (*Id.* at ¶ 68.)

Wier also reported the February 13th incident to Simpson and gave Simpson copies of Paco's e-mail complaint as well as his e-mail exchange with Behringer. (Def. 56.1 ¶ 69.)

On February 15, 2007, Behringer gave Tucker another version of the February 13th incident, stating (twice) that Destiny had "ripped her clothes off and was rolling around the floor naked." Plaintiff also told Tucker that Paco was gawking, watching this naked girl on the floor, and wouldn't move away when she (plaintiff) asked him to move. Behringer claimed that she had to speak to Wier and instruct him to talk with Paco. (Def. 56.1 ¶¶ 70-71.)  Concerned that a potentially predatory situation had taken place, Tucker spoke with Wier again. Wier denied Behringer's account. Tucker then spoke with Simpson and told him she was concerned about plaintiff's conduct. (*Id.* at ¶¶ 72-73.)

Simpson decided that to conduct an investigation and did so when School recommenced after the Spring Recess on February 26, 2007. He interviewed all of the employees present during the February 13th incident. (Def. 56.1 ¶ 73.)   Not a single witness corroborated Behringer's claim that Destiny "had her pants down and her ass out" or was "rolling around the floor naked from the waist down." (*Id.* at ¶ 74.)  Not a single witness corroborated Behringer's claim that Paco and/or Orlando were staring or gawking at Destiny. (*Id.* at ¶ 75.) Not a single witness supported, as reasonable, Behringer's belief that Destiny "looked like" she was receiving

a suppository. (*Id.* at ¶ 76.)  The only time such treatment was prescribed and implemented was for "Danny G," a child with a seizure disorder, and then, an entire plan of action was set up to ensure proper administration of the suppository. (*Id.* at ¶ 77.)

Destiny was not having a seizure and had no medication plan calling rectal suppositories. No Lavelle student has ever been administered a rectal suppository with five people standing around; this would have been abusive and contrary to standard of care. (Def. 56.1 ¶ 77.)

In addition, several employees reported plaintiff being nasty, sarcastic and uncivil to Paco in the presence of his student, Orlando G. (Def. 56.1 ¶ 78.)

On February 26th, Simpson spoke with Behringer about the incident, who considered the matter a "non-event" and "not worthy of a lot of time." (*Id.* at ¶ 79.)

After his interviews, Simpson decided to terminate plaintiff for inappropriate conduct surrounding the February 13th incident. On February 28, 2007, Simpson informed Behringer that she was being discharged and handed her a termination memo, which stated that plaintiff was being terminated for "behavior in the work environment that is unacceptable for an administrator and a Lavelle School employee." (*Id.* at ¶¶ 80-81.)

## ARGUMENT[6]

### I.    THE EVIDENTIARY FRAMEWORK

Employment-based claims of discrimination and retaliation under to the ADA[7] and the FMLA are analyzed under the familiar evidentiary framework established by the Supreme Court

---

[6]    Defendants assume this Court's familiarity with the well-established standard for summary judgment and the Rule 56(e) burden on plaintiff to produce concrete, admissible evidence showing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).  Defendants note, however, the Second Circuit's repeated reminder that the "salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).  *See also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

-13-

in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), and requires a plaintiff, like Behringer to establish a *prima facie* case. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524, 113 S. Ct. 2742 (1993); *Potenza v. City of New York,* 365 F.3d 165, 167-68 (2d Cir. 2004) (*McDonnell Douglas* applies to discrimination or retaliation claims under the FMLA).

Assuming such case is made, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for the contested employment action. *McDonnell Douglas*, 411 U.S. at 802; *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142-43 (2000). Once a nondiscriminatory or nonretaliatory basis for the challenged employment action is stated, the presumption of discrimination or retaliation "drops out of the picture" and the burden shifts to the plaintiff to demonstrate pretext. *St. Mary's Honor Ctr.*, 509 U.S. at 510-11 (internal citations omitted). This requires a plaintiff to come forward with evidence that the "legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001) (*citing Reeves*, 530 U.S. at 143). The ultimate burden, however, remains at all times with the plaintiff.

## II.     THE EVIDENTIARY RECORD DOES NOT SUPPORT PLAINTIFF'S CLAIMS FOR DISABILITY-BASED DISCRIMINATION, RETALIATION OR HARASSMENT

### A.     The Complaint Fails to State a Claim for Disability-Based Retaliation

In her complaint, Behringer alleges that Simpson "retaliated against her after she disclosed that she [was] a recovering alcoholic" and "unlawfully discharged her for engaging in protected activity, in violation of the ADA." (Compl. ¶¶ 2, 78.)   Wholly absent from the pleadings or the evidentiary record, however, is any identification of the alleged protected activity that plaintiff engaged in vis-à-vis her status as a recovering alcoholic.

---

[7]   Claims pursuant to the NYSHRL and NYCHRL are analyzed under the same framework as their ADA counterpart, though the definition of "disability" under these statutes is broader. *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 155 (2d Cir. 1998).

-14-

The ADA provides that "no person shall discriminate against any individual because such individual.... made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter. 42 U.S.C. § 12203(a). This provision has been construed by the courts to require an employee to demonstrate that he was engaged in some kind of activity protected by the ADA, such as protesting or otherwise opposing disability discrimination or making a request for reasonable accommodation. *Gold v. Carus*, 131 Fed. Appx. 748, 750 (2d Cir. 2005); *Weixel v. Bd. of Educ.*, 287 F.3d 138, 149 (2d Cir. 2002) (requesting accommodation constitutes protected activity).

Plaintiff identifies no protected activity that she engaged in relating to her alleged disability as a recovering alcoholic. The only arguable protected activity that Behringer engaged in was when she refused to provide Simpson with clarification regarding her FMLA in November of 2005 and gave him a memo accusing him of violating her FMLA rights. This activity cannot form the basis for a retaliation claim under the ADA. *See Moss v. Port Auth. of New York and New Jersey*, No. 04 Civ. 9631 (GEL), 2006 WL 3392693, at *9 (S.D.N.Y., Nov. 20, 2006) (no claim of ADA retaliation will lie where the plaintiff's protested activity does not raise the issue of disability discrimination or other matter under the ADA).

**B.** **Plaintiff Cannot Establish a Claim for Disability-Based Harassment**

Equally lacking in merit is plaintiff's claim of disability-based hostile work environment harassment. (*See* Compl. ¶¶ 42-45, 104, 118.) The standard for harassment claims under the ADA "is a 'demanding one,' and a plaintiff must establish that the alleged harassment was "offensive, pervasive, and continuous enough' to create an abusive working environment." *Monterroso v. Sullivan & Cromwell, LLP*, 591 F.Supp.2d 567, 584-85 (S.D.N.Y. 2008) (*quoting Scott v. Memorial Sloan-Kettering Cancer Ctr.*, 190 F. Supp. 2d 590, 599 (S.D.N.Y. 2002).

-15-

The record here is devoid of any facts to satisfy this standard. At deposition, plaintiff identified the following four incidents of alleged "harassment" that took place after June 23, 2006, when Simpson allegedly learned she was a recovering alcoholic:

(i)   During a staff meeting in July or August 2006, Simpson yelled at plaintiff regarding scheduling issues and made her cry.

(ii)   When plaintiff returned to the School in September 2006, Simpson greeted her with a sarcastic remark.

(iii)   In December 2006, Simpson repeatedly offered plaintiff a drink during a School holiday party.

(iv)   In January 2007, Simpson gave plaintiff a written warning for violating the attendance policy.

(Def. 56.1 ¶¶ 54-58.) Plaintiff concedes that Simpson yelled at Nanry and Tucker at the staff meetings in July and August 2006. Nanry and Tucker themselves testified that Simpson yelled at them equally and that he made the same sarcastic remarks to them when they returned to the School in September 2006. As for the "harassment" of offering plaintiff a drink at the December 2006 holiday party, Simpson offered several employees drinks as they arrived at the party and did not single plaintiff out in any way.

Finally, at deposition, plaintiff conceded to the infraction for which Simpson wrote her up. (*Id.*)

Absent from the case at bar is any evidence that Simpson made disability-related remarks to or about plaintiff, singled her out for adverse actions, or treat her in a disparate fashion compared with Nanry and Tucker. Behringer's disability harassment claims should be dismissed.

**C.   Plaintiff Cannot Establish A Claim for Disability Discrimination**

Finally, plaintiff's allegations that Simpson discriminated against her because she is a recovering alcoholic must also be dismissed on multiple grounds.

**1.   Behringer Is Not Disabled under the ADA**

Behringer must first establish that she is "disabled" within the meaning the ADA. "Disability" under the ADA includes: (1) a physical or mental impairment that substantially

NY01/PARKJE/1398753.3

limits a major life activity; (2) a record of such an impairment, or (3) a perceived impairment. 42 U.S.C. § 12102(2); *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005). "Major life activities," in turn, are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(l). Behringer cannot satisfy any of these standards.

The record is wholly devoid of any evidence that Behringer's recovering alcoholism limited her ability to engage in any of these activities, let alone materially limited her. By plaintiff's own account, she has been sober since 1993 and has required no medication or medical treatment for this condition. She has been fully able to work and care for herself and is not restricted in the condition, manner or duration under which she can work or care for herself as compared to that of any average person. 29 C.F.R. § 1630.2(j).

The only "treatment" plaintiff requires is to attend AA meetings. She appears to have no limitations, material or otherwise, as a result of her alcoholism. Myriad courts have dismissed ADA claims under these circumstances. *Stuart v. Danka Corp.*, 986 F. Supp. 741, 744-45 (E.D.N.Y. 1997) (recovering alcoholic who maintained sobriety not disabled under the ADA where the record showed no limitations, and, to the contrary, showed the plaintiff working continuously and occupying positions of significant authority); *St. John v. NCI Building Sys., Inc.*, 537 F. Supp. 2d 848, 862 (S.D. Tex. 2008) (recovering alcoholism not a disability within the meaning of the ADA where the plaintiff failed to establish or even argue that his status as a recovering alcoholic limited him in any major life activity).

Behringer also cannot establish that she has a "record" of disability because she produced no evidence, other than her own unsubstantiated say-so, that she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). The district court in *Bilodeau v. Mega Indus.*, 50 F.

-17-

Supp. 2d 27, 38 (D. Me. 1999), declined to find that the plaintiff, a recovering alcoholic, had a "record of disability" within the meaning of the ADA based merely on two incidents of hospitalization within a ten-year period, where the plaintiff never provided her employer with any medical restrictions and her personnel file was devoid of any indication that she suffered from alcoholism.

Here too, plaintiff never provided Defendants with any medical restrictions throughout her employment with Lavelle and her personnel records are devoid of any indication that she suffered from alcoholism.  Behringer simply cannot establish any "record of disability."

Finally, Behringer cannot establish that Simpson "perceived" her to be disabled. To stated such a claim, a plaintiff must allege that her employer believed her to suffer from a "substantially limiting" impairment and discriminated against her on that basis. *Francis v. City of Meriden*, 129 F.3d 281, 285 (2d Cir. 1997).  In her complaint, plaintiff fails to allege that Simpson perceived her to be disabled and otherwise failed, at deposition, to identify any treatment from Simpson to support an inference that he considered her to be significantly restricted in any way, including in her ability to perform her job.  Under similar circumstances, this Court declined to find that the plaintiff was "perceived to be disabled" in the absence of any evidence of treatment indicating that his employer deemed him to be substantially limited in any way.  *See Alston v. New York City Transit Auth.*, 02 Civ. 2400 (JGK), 2003 U.S. Dist. LEXIS 21741, at *18-22 (S.D.N.Y. Dec. 3, 2003).

**D.     Simpson's Actions Were Legitimate and Nondiscriminatory
         and Cannot Be Refuted as Pretext For Disability Discrimination**

Even assuming that Behringer is disabled under the ADA, she cannot establish that she was subjected to any adverse employment actions under circumstances giving rise to an inference of disability discrimination.  The only concrete examples that plaintiff gives of Simpson's alleged discrimination other than her February 13, 2007 discharge, are the same

-18-

incidents proffered in support of her harassment claim.   None of these incidents constitute adverse employment actions. None support an inference of invidious intent on the part of Simpson.

As for plaintiff's February 26, 2007 discharge, Simpson's decision was driven entirely by legitimate, non-discriminatory considerations supported by reports from all employees involved. As reported to him by other employees, plaintiff falsely accused a male staff member of behaving in a predatory fashion toward a female student and falsely reported what was tantamount to abuse of that female student in claiming that she was "naked from the waist down" receiving a rectal suppository in plain view of several employees and 2 students.   Indeed Behringer admitted at deposition that:

- Sarcasm, screaming or snapping at Paco and Paco's student would not have been appropriate behavior on her part. (411-42.)
- Falsely reporting child abuse is a serious infraction and a terminable offense. (447-48.)
- Falsely reporting another employee of acting in a sexually predatory way toward a student is a serious infraction and a terminable offense. (449.)

Where, as here, an employer reasonably, and in good faith, relies on reports of misconduct in making a discharge decision, it is not necessary to prove that an employee actually committed the misconduct in order to prevail on summary judgment.   *McPherson v. NYC Dep't of Ed.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case, however, we are decidedly not interest in the truth of the allegations against plaintiff.   We are interested in what "*motivated* the employer."" (internal citation omitted)); *Kolesnikow v. Hudson Valley Hosp. Ctr*, 622 F. Supp.2d 98, 110 (S.D.N.Y. 2009) (rejecting a plaintiff's arguments of pretext on the grounds that the defendants had "falsely accused her of misconduct or exaggerated her misconduct," and stating that the salient inquiry is not whether the employer reached the correct conclusion, but whether it made a good-faith business determination).

Even Behringer admits that had she done what was reported to Simpson by other employees, termination would have been warranted:

> Q: What about falsely accusing a Lavelle employee of staring at a naked female student receiving a rectal suppository; would that be grounds for discharge?
>
> A: It that's what happened, yes.

(450.)

Further, it bears noting that Simpson summarily discharged other employees for misconduct and none of these employees was disabled or had taken or requested FMLA leave. (Simpson Aff. ¶ 92.)

## II.   THE RECORD EVIDENCE DOES NOT SUPPORT PLAINTIFF'S FMLA CLAIMS

For her second count, Behringer claims that Defendants interfered with her rights under the FMLA and also discriminated or retaliated against her for exercising her FMLA rights. (Compl. ¶¶ 84-97.)  Neither contention has merit.

### A.   Plaintiff Cannot, As a Matter of Law, Establish That Defendants Interfered With Her FMLA Rights

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615.  In order to state a claim for interference under the FMLA, a plaintiff must show that: (1) her employer interfered with, restrained, or denied rights protected by the FMLA, and (2) that she has been prejudiced by the violation. *Roberts v. Health Ass'n*, 308 Fed. Appx. 568, 570-71,  WL 248069, at *3 (2d Cir. Feb. 3, 2009).  Furthermore, aggrieved

individuals must bring suit for alleged FMLA violations within 2 years of the alleged violation, or 3 years if the violation is willful. 29 U.S.C. § 255(a).[8]

Behringer, here, applied for and took intermittent FMLA leave from April of 2005 until November of 2005. No one from Lavelle, including Simpson, interfered with, harassed or discouraged Behringer from taking such leave. Plaintiff, moreover, was not denied any benefits to which she was entitled under the FMLA. Where, as here, a plaintiff has received all of the leave to which she was entitled and there has been no denial of benefits, a *prima facie* case of interference with FMLA leave cannot lie. *Germanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004).

### B.   Plaintiff Cannot, as a Matter of Law, Establish a Claim for Retaliation or Discrimination Under the FMLA

In order to establish a *prima facie* case of retaliation, Behringer must establish that (1) she exercised her rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliation. *Potenza*, 365 F.3d at 168; *Sista v. CDC Ixis North Am., Inc.*, 445 F.3d 161 (2d Cir. 2006). Behringer cannot satisfy the fourth element of her case.

Behringer points to the following adverse actions allegedly taken by Simpson in connection with her FMLA claim, which, with minor exception, are the same actions upon which she bases her disability claims:

1.   On November 21 or 22, 2005, Simpson requested clarification about how she used her time while in the Bahamas;

2.   On January 11, 2006, Simpson issued plaintiff a negative performance evaluation;

---

[8]   Plaintiff commenced the instant action on May 28, 2008.  Extending her the longer limitations period, any alleged pay disparities that accrued prior to December 27, 2002 are time-barred.

3. During a staff meeting in July or August 2006, Simpson yelled at plaintiff and then made a sarcastic remark to plaintiff when she returned to work in September 2006;

4. In January 2007, Simpson issued plaintiff a "frivolous" warning for an infraction she admits she committed.

None of these incidents, accepting them as true, constitutes adverse employment actions.

An employer is allowed to inquire of an employee if it has reason to believe that an employee is abusing her FMLA rights. *See Leboeuf v. NYU Med. Ctr.*, 98 Civ. 0973 (JSM), 2000 U.S. Dist. LEXIS 18263, at *8 (S.D.N.Y. Dec. 20, 2000) (an employer may discharge an employee if it honestly believes that the employee is not using the leave for its intended purpose); *Kitts v. Gen'l Tel. North, Inc.* , Case No. 2:04-cv-173, 2005 U.S. District LEXIS 20421, at *33 (S.D. Ohio, Sept. 19, 2005) ("[N]othing in the FMLA prohibits an employer from investigating allegations of dishonesty or from terminating an employee who violates company policies governing dishonesty").

As for the negative evaluation issued in January 11, 2006, it was rescinded by Simpson, at plaintiff's request, in 3 months' time, and Behringer admits that she suffered no tangible injury in the interim.  The other incidents, e.g., the July and August meetings, the September 2006 remark, and the January 2007 written warning, are too remote in time to plaintiff's November 2005 FMLA leave to support a causal connection and are otherwise bereft of any indicia of retaliatory animus to support plaintiff's FMLA claim.

As for plaintiff's February 28, 2007 discharge, the record is wholly devoid of any competent evidence from which a jury could plausibly find any relation to plaintiff's November 2005 FMLA leave.  As set forth, *supra* at 18-20, Defendants discharged plaintiff for reported misconduct which plaintiff cannot refute as pretextual.  *Beligotti-Fenti v. Paychex, Inc.*, 2009 WL 3756954, at *7 (W.D.N.Y. )(dismissing FMLA retaliation claim where the plaintiff was fired for untruthfulness during a sexual harassment investigation).

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request the grant of their Motion dismissing the complaint, along with such other and further relief as the Court deems just and proper.

Dated: New York, New York
     April 23, 2010

KELLEY DRYE & WARREN LLP

By: _____
    Jean Y. Park
    101 Park Avenue
    New York, New York 10178
    (212) 808-5019
    Attorneys for Defendants
    LAVELLE SCHOOL FOR THE BLIND
    and FRANK SIMPSON