Kenneth A. Goldberg, Esq.
Goldberg & Fliegel LLP
60 East 42nd Street, Suite 3421
New York, New York 10165
(212) 983-1077
Attorneys For The Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ELEANOR ("RONNIE") BEHRINGER,                    :

                    Plaintiff,       :       **Index No. 1:08-cv-04899-JGK-THK**

       - against -                              :

LAVELLE SCHOOL FOR THE BLIND AND                 :
FRANK SIMPSON,

                             :

               Defendants.

                             x

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL OVERVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Plaintiff's Employment With Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.    Plaintiff's Job Performance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    D .    Plaintiff Is A Recovering Alcoholic . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    E.    Frank Simpson Joined Lavelle In 2001 And For Years Gave Plaintiff Positive Performance Evaluations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    F.    In 2005 Plaintiff Took FMLA Leave To Care For Her Father And Frank Simpson Violated Her FMLA Rights When She Returned . . . . . . . . . . . . . . . . . . . . . . . . 4

    G.    In January 2006, Simpson Retaliated Against Plaintiff By Giving Her A Negative Performance Evaluation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    H.    Plaintiff's Father Died February 28, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    In April 2006, Simpson Gave Plaintiff A New Evaluation And Reappointed Her . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    J.    In June 2006, Plaintiff Told Simpson She Is A Recovering Alcoholic And This Is When He First  Learned That Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    K.    Thereafter, Simpson Targeted Plaintiff For Resignation And/Or Discharge With A Series Of Unlawful Acts Against Her . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    L.    Summer 2006 Staff Meetings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    M.    Start Of Fall 2006 Semester . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    N.    2006 Christmas Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    O.    January 2007 Unfounded And Uncalled-For Warning . . . . . . . . . . . . . . . . . . . 8

i

P.       Other Incidents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Q.       Termination Of Employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

R.       EEOC Charge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

S.       Defendants' Statements To EEOC About Plaintiff's Disability  . . . . . . . . . . . . 8

T.       Defendants' Statements About Plaintiff's Discharge  . . . . . . . . . . . . . . . . . . . . 9

U.       Mr. Simpson's Explanation For Discharge In Deposition . . . . . . . . . . . . . . . . . 9

V.       Mr. Simpson's Explanation Is Pretextual  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

W.       Defendants' Change Of Story Regarding Plaintiff's Disability . . . . . . . . . . . . 10

X.       Defendants' Change Of Story Regarding Plaintiff's Discharge  . . . . . . . . . . . 11

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

**I.     THE RIGOROUS STANDARD FOR A MOTION FOR
        SUMMARY JUDGMENT**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

**II.    THE STANDARDS UNDER THE ADA, NYSHRL AND NYCHRL** . . . . . . . . . . . **13**

**III.   THE COURT SHOULD DENY DEFENDANTS' MOTION REGARDING
        PLAINTIFF'S CLAIMS OF DISABILITY DISCRIMINATION**  . . . . . . . . . . . . . **14**

        A.       Plaintiff Was Fully Qualified For Her Position . . . . . . . . . . . . . . . . . . . . . . . . . 14

        B.       Plaintiff Is Disabled Within The Meaning Of Applicable Law . . . . . . . . . . . . . 15

        C.       Plaintiff Disclosed Her Disability To Defendant Simpson In Or About June 2006,
                 As Confirmed By Plaintiff And Defendants' Own EEOC Submissions . . . . . . 15

        D.       Plaintiff Was Subjected To Adverse Employment Actions Under Circumstances
                 Giving Rise to An Inference of Disability Discrimination  . . . . . . . . . . . . . . . . 17

**IV.    THE STANDARDS UNDER THE FMLA**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

**V.     PLAINTIFF ESTABLISHED HER CLAIM OF
        VIOLATION OF THE FMLA** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**

      A.     Plaintiff Established The Elements Of Her Claim . . . . . . . . . . . . . . . . . . . . . . . . 22

      B.     Defendants' Arguments Add Nothing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**VI.   PLAINTIFF ESTABLISHED HER CLAIM OF
DISABILITY HARASSMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24**

**VII.  DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S ADA RETALIATION
CLAIM SHOULD BE DENIED BECAUSE PLAINTIFF'S CLAIM IS PROPERLY
PLEADED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25**

**CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25**

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Cases</u>

Allen v. J.P. Morgan Chase & Co., 2009 WL 857555 (S.D.N.Y.) (Koeltl, J.) . . . . . . . . . . . . . 19

Aulicino v. N.Y.C. Dept. of Homeless Services, 580 F.3d 73 (2d Cir. 2009) . . . . . . . . . . . . . . 24

Binder v. Long Island Lighting Co., 933 F.2d 187 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 17

Brady v. Wal-Mart, 531 F.3d 127 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Buckley v. Consolidated Edison Co., 127 F.3d 270 (2d Cir. 1997), vacated on other grounds on reconsideration en banc, 155 F. 3d 150 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Capobianco v. City of New York, 422 F.3d 47 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 13

Carlton v. Mystic Transp. Inc., 202 F.3d 129 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 17, 20

Cronin v. Aetna Life Ins. Co., 46 F.3d 196 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Dister v. Cont'l Group, Inc., 859 F.2d 1108 (2d Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20

E.E.O.C. v. Town of Huntington, 2008 WL 361136  (E.D.N.Y.) (Hurley, J.) . . . . . . . . . . . . . 17

EEOC v. Ethan Allen, Inc., 44 F.3d 116 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Espinal v. Goord, 558 F.3d 119  (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fabela v. Socorro Independent School District, 329 F. 3d 409 (5th Cir. 2003) . . . . . . . . . . . . . 19

Fincher v. Depository Trust, 2010 WL 1931637 (2d Cir. May 14, 2010) . . . . . . . . . . . . . . . . . 12

Fruchter v. Sossei, 1996 WL 640896 (S.D.N.Y.) (Sand, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Gallo v. Prudential Residential Services, 22 F. 3d 1219 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . 12

Garcia v. Gloor, 618 F.2d 264 (5th Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Grant v. Bethlehem Steel Corp., 622 F2d. 43 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Greenway v. Buffalo Hilton Hotel, 143 F.3d 47 (2d Cir. 1998) , 143 F.3d 47 . . . . . . . . . . . . . 14

Hamilton v. Niagara Frontier Transportation Authority, 2008 WL 4724324 (W.D.N.Y.)
(Schroeder, M. J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Holcomb v. Iona College, 521 F.3d 130 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Jackson v. Ebasco Servs. Inc., 634 F. Supp. 1565 (S.D.N.Y. 1986) (Sprizzo, J.) . . . . . . . . . . . 17

Knight v. U.S. Fire Ins. Co., 804 F.2d 9 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987) . . . . 12

Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . 13

McBride v. Bic Consumer Prd., 583 F.3d 92 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 13

McCowan v. HSBC Bank USA, N.A., 2010 WL 550235 (E.D.N.Y.) (Bianco, J.) . . . . . . . . 13, 24

McKenzie v. Nicholson, 2009 WL 179253 (E.D.N.Y.) (Bianco, J.) . . . . . . . . . . . . . . . . . . . . 19

Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . 25

Murphy v. General Elec. Co., 245 F. Supp. 2d 459 (N.D.N.Y. 2003) (Homer, M. J.) . . . . . . . . 16

Panzarino v. Deloitte & Touche LLP, 2009 WL 3539685 (S.D.N.Y.) (Jones, J.) . . . . . . . . . . . 24

Paolitto v. John Brown E. & C. Inc., 151 F.3d 60 (2d Cir.1998) . . . . . . . . . . . . . . . . . . . . . . 16

Parker v. Columbia Pictures Industries, 204 F. 3d 326 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . 13

Potenza v. City of New York, 365 F.3d 165 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Quinby v. WestLB AG, 2007 WL 1153994 (S.D.N.Y.) (Pauley, J.) . . . . . . . . . . . . . . . . . . . . 19

Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . 12, 21

Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35 (2d Cir. 2002), cert.
denied 537 U.S. 813 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 25

Ribis v. Mike Barnard Chevrolet-Cadillac, Inc., 468 F. Supp.2d 489 (W.D.N.Y. 2007) . . . . . . 24

Richardson v. N.Y.S. Dept. of Corr., 180 F.3d 426 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 24

Rosen v. Thornburgh, 928 F.2d 528 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

<u>Tomassi v. Insignia Financial Group, Inc.</u>, 478 F. 3d 111 (2d Cir. 2007) . . . . . . . . . . . . . . . . . 12

<u>Weiss v. JPMorgan Chase & Co.</u>, 2010 WL 114248 (S.D.N.Y.) (Cote, J.) . . . . . . . . . . . . . . . 13

<u>Weiss v. JPMorgan Chase & Co.</u>, 332 Fed.Appx. 659 (2d Cir. 2009) (summary order) . . . 20, 21

<u>Whidbee v. Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62 (2d Cir. 2000) . . . . . . . . . . . . . . . . 24

**State Cases**

<u>Matter of Classic Coach v Mercado</u>, 280 A.D.2d 164 (2d Dept. 2001), <u>lv. denied</u> 97 N.Y.2d 601
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Williams v. N.Y. City Hous. Auth.</u>, 61 A.D.3d 62 (1ˢᵗ Dep't 2009), <u>lv. denied</u> 3 N.Y.3d 702
(2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 24

**Federal Statutes**

29 U.S.C. § 2601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 2615 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

42 U.S.C.  § 12102(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

42 U.S.C. § 12101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 12203(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

42 U.S.C. § 12203(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**Federal Rules**

Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**State Statutes**

N.Y. Exec. L. § 290 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Local Laws**

N.Y.C. Admin. Code § 8-101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## PRELIMINARY STATEMENT

Plaintiff submits this memorandum of law in opposition to Defendants' motion for summary judgment and dismissal.  For the reasons discussed below and in Plaintiff's Statement Of Disputed Material Facts Pursuant To Local Rule 56.1 ("Plaintiff's Statement of Facts", "Plaintiff's Statement" or "Pl. Stmnt."), the Court should deny Defendants' motion.  This is an action to redress unlawful discrimination, harassment, retaliation and discharge, in violation of the Americans with Disabilities Act  (the "ADA"), 42 U.S.C. § 12101 et seq., the Family and Medical Leave Act of 1993 (the "FMLA"), 29 U.S.C. § 2601 et seq., the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. L. § 290 et seq., and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.

Plaintiff was employed by Defendants for about 17 years, from 1990 through her termination in February 2007.  She established an outstanding track record of job performance and loyalty.  In 2005, Plaintiff asserted her right to take FMLA leave to care for her dying father. Defendant Simpson discriminated against and harassed Plaintiff for doing so, including challenging Plaintiff's activities on a Saturday, which is not covered by the FMLA.  Plaintiff complained in writing about Defendant Simpson's unlawful conduct and complained verbally to Defendants' counsel. Defendants did not investigate or take any remedial action.  Instead, Defendants gave Plaintiff a negative performance evaluation in January 2006.  In or about June 2006, Plaintiff disclosed to Defendant Simpson that she is a recovering alcoholic.  Defendant Simpson then harassed Plaintiff in the Summer of 2006, Fall of 2006, Winter of 2006 and January 2007, apparently in an effort to coerce her resignation.  When Plaintiff declined to resign, Mr. Simpson unlawfully terminated her in February 2007 based on false accusations of

improper behavior.  Defendants unlawfully fired Plaintiff because she exercised her FMLA rights, complained about violations of same, and disclosed that she is a recovering alcoholic.

Plaintiff did not engage in any improper behavior, as corroborated by deposition testimony, documents and a witness affidavit submitted with Plaintiff's opposition papers.  This evidence of the falsity of Defendants' reasons precludes Defendants' motion. Defendants also changed their story for this litigation.  During proceedings before the EEOC in 2007 and 2008, Defendants alleged that Mr. Simpson first learned that Plaintiff was a recovering alcoholic when she told him so in June 2006.  In addition, during the same EEOC proceedings, Defendants alleged that Mr. Simpson fired Plaintiff because of six years of unsatisfactory job performance. After this lawsuit was filed in 2008, Defendants, represented by new counsel, changed their story to allege that Mr. Simpson somehow knew Plaintiff was a recovering alcoholic for years before she told him in 2006, and changed their story to allege that Mr. Simpson fired Plaintiff solely because of Plaintiff's alleged improper behavior on February 13, 2007, when Plaintiff simply intervened to protect a female student that had a tantrum in the school gym.  This change of story is further evidence of the falsity of Defendants' reasons that mandates denial of their motion.

Defendants' motion does nothing more than attempt to dispute Plaintiff's admissible evidence regarding Plaintiff's outstanding job performance, her exercise of protected FMLA rights, disclosure of a disability in or about June 2006 (recovering alcoholic status), complaints of discrimination, and incidents of discrimination, harassment and retaliation, Plaintiff's evidence that she acted properly on February 13, 2007 when Plaintiff simply intervened to protect a female student that had a tantrum in the school gym, and Plaintiff's evidence that Defendants and Mr. Simpson were fully aware that Plaintiff had acted properly.  Plaintiff is

2

entitled to a trial because Defendants' arguments are contradicted by the facts and law.

## FACTUAL OVERVIEW

**A.**     **Introduction**

Plaintiff Eleanor ("Ronnie") Behringer ("Plaintiff" or "Ms. Behringer") alleges that Defendants Lavelle School For The Blind ("Lavelle" or the "School") and Frank Simpson ("Mr. Simpson"), Superintendent of Lavelle, unlawfully discriminated against, retaliated against and discharged her after she sought protected FMLA leave to care for her ailing father and after she disclosed to Mr. Simpson that she is a recovering alcoholic.  (Pl. Stmnt. Point II-A).

**B.**     **Plaintiff's Employment With Defendants**

Ms. Behringer was employed by Lavelle from 1990 through February 28, 2007, when she was unlawfully discharged.  Her final position was lower school Principal.  As such, Plaintiff's duties included, among other items, provide guidance, support and supervision to Program Directors, responsibility for the safety and welfare of the students.  (Pl. Stmnt. Point II-B).

**C.**     **Plaintiff's Job Performance**

Ms. Behringer was qualified for her position with Lavelle.  She established a track record of outstanding job performance.  For years, Defendants issued written performance evaluations to Ms. Behringer, stating that her overall job performance was "excellent" or "met expectations" as well as other documents praising her.  During Ms. Behringer's employment with Lavelle, Lavelle repeatedly reappointed Ms. Behringer and gave her raises.  (Pl. Stmnt. Point II-C).

**D .**     **Plaintiff Is A Recovering Alcoholic**

Ms. Behringer is a recovering alcoholic and a member of Alcoholics Anonymous.  Ms. Behringer requires and receives ongoing treatment from Alcoholics Anonymous.  In January

3

1993, Ms. Behringer, then a teacher at Lavelle, was hospitalized and went on disability leave for alcoholism and related medical conditions.  At the time, Ms. Behringer suffered from an addiction to and dependence on alcohol.  Her alcoholism is an impairment that substantially limited one or more major life activities, including working.  Ms. Behringer returned to work at Lavelle in the Fall of 1993.  Since her discharge from the hospital in May 1993, Ms. Behringer has been and is a recovering alcoholic.  Notably, Ms. Behringer, a recovering alcoholic, has an undisputed history and record of alcoholism that previously substantially limited her major life activities, including working.  (Pl. Stmnt. Point II-D).

**E.      Frank Simpson Joined Lavelle In 2001 And For Years Gave Plaintiff Positive Performance Evaluations**

During 2001, Lavelle hired Frank Simpson as Superintendent and he became Ms. Behringer's direct supervisor.  Mr. Simpson was the highest authority at Lavelle and had authority to hire and fire.  According to Mr. Simpson, he made the decision to fire Plaintiff.  For years, Mr. Simpson prepared written evaluations of Ms. Behringer's job performance and other documents, praising Plaintiff's job performance, and for years he renewed her employment. According to Mr. Simpson, in order for Plaintiff's employment to be renewed, she had to be performing satisfactorily and he reviewed Plaintiff's performance evaluation in deciding to renew her employment. (Pl. Stmnt. Point II-E).

**F.      In 2005 Plaintiff Took FMLA Leave To Care For Her Father And Frank Simpson Violated Her FMLA Rights When She Returned**

During 2005, Ms. Behringer exercised her legal right to take protected leave under the FMLA to care for her father, who had been diagnosed with terminal cancer.  Mr. Simpson, who

4

was Ms. Behringer's direct supervisor, discriminated against and retaliated against Ms. Behringer for doing so.  In November 2005, Ms. Behringer received a memorandum dated November 23, 2005 from Mr. Simpson, that raised false allegations about her FMLA leave and violated her rights under the FMLA.  For example, Mr. Simpson essentially falsely accused Ms. Behringer of abusing her FMLA leave when she participated in a triathlon for less than two hours <u>on a Saturday</u> (November 5, 2005), a non-FMLA day.  According to Defendants' records, Plaintiff took various FMLA days from May through November 2005, far less than the 12 weeks allowed by FMLA. Mr. Simpson's actions constituted harassment and discrimination for exercise of FMLA rights.  Defendants admit that (a) Plaintiff did not work Saturdays, (b) her running a triathlon on a Saturday did not count as usage of FMLA leave, and (c) there was nothing improper about Plaintiff running a triathlon on November 5, 2005.  Defendants admit that Plaintiff did not exhaust her FMLA leave.

On or about December 15, 2005, Plaintiff filed a written complaint with Mr. Simpson regarding his violation of her FMLA rights.  She complained, among other items, that Mr. Simpson was unlawfully charging her FMLA days on non-work days.  According to Mr. Simpson, he forwarded the complaint memorandum to outside counsel Vincent D'Andrea, Esq. Based on Mr. D'Andrea's time records, he discussed the matter with Mr. Simpson on or about December 17, 2005.  On or about December 21, 2005, Ms. Behringer complained to Mr. D'Andrea that Defendant Simpson was "fucking with my FMLA days and I have a labor lawyer." As Plaintiff testified, Mr. Simpson's actions made Plaintiff feel "very uncomfortable" taking any days off, as she was placed in fear of disciplinary action by Mr. Simpson.  Mr. D'Andrea advised Defendant Simpson of Plaintiff's verbal complaint.  Defendants did not investigate or take any

5

remedial action regarding the complaint and no one got back to Ms. Behringer about her protected complaints.  (Pl. Stmnt. Point II-F).

**G.      In January 2006, Simpson Retaliated Against Plaintiff By Giving Her A Negative Performance Evaluation**

In January 2006, Mr. Simpson issued a performance evaluation to Ms. Behringer raising false criticisms of her job performance, defaming her, and falsely alleging that her performance was "below expectations."  Ms. Behringer's job performance was, in fact, exemplary.  Mr. Simpson did so as an act of discrimination, harassment and retaliation for Plaintiff's protected FMLA complaints. Mr. Simpson consulted with Mr. D'Andrea regarding Plaintiff.  On or about January 12, 2006, Ms. Behringer submitted a written complaint to Mr. Simpson regarding the January 2006 evaluation. (Pl. Stmnt. Point II-G).

**H.      Plaintiff's Father Died February 28, 2006**

In February 2006, Ms. Behringer again took protected FMLA leave to care for her ailing father and, on February 28, 2006, he died.  (Pl. Stmnt. Point II-H).

**I.      In April 2006, Simpson Gave Plaintiff A New Evaluation And Reappointed Her**

On or about April 12, 2006, Lavelle issued a performance evaluation to Plaintiff with an overall rating of met expectations.  According to Mr. Simpson, the evaluation was for the period January to April 2006 and Plaintiff was satisfactorily performing her duties when she received the evaluation in April 2006.  On April 12, 2006, Defendants also issued a memorandum to Ms. Behringer praising her and reappointing her for the 2006-2007 school year.  According to Mr. Simpson, as of April 12, 2006, Plaintiff was in good standing, her job was not in jeopardy, and she was performing at the level of meets expectations.  (Pl. Stmnt. Point II-I).

**J.      In June 2006, Plaintiff Told Simpson She Is A Recovering Alcoholic And This Is When He First  Learned That Fact**

In or about June 2006, Plaintiff advised Defendant Simpson and Mr. D'Andrea that she is a recovering alcoholic and a member of Alcoholics Anonymous.  (Pl. Stmnt. Point II-J). According to Defendants' EEOC submissions, Defendant Simpson <u>first</u> learned of Plaintiff's recovering alcoholic status at this time, June 2006.  (Pl. Stmnt. Point II-T).

**K.      Thereafter, Simpson Targeted Plaintiff For Resignation And/Or Discharge With A Series Of Unlawful Acts Against Her**

During 2006 and 2007, Mr. Simpson engaged in various acts of unlawful discrimination, harassment and retaliation against Ms. Behringer, based on her disability and exercise of protected statutory rights under FMLA, to compel her resignation from Lavelle and/or to set her up for unlawful discharge.  (Pl. Stmnt. Point II-K).

**L.      Summer 2006 Staff Meetings**

During staff meetings held in the Summer of 2006, Mr. Simpson screamed, pounded his fists, and verbally abused Ms. Behringer, causing her to cry.  He then verbally abused her for crying.  (Pl. Stmnt. Point II-L).

**M.      Start Of Fall 2006 Semester**

The next time Mr. Simpson saw Ms. Behringer was in September 2006, at or about the beginning of the school year.  At that time, Mr. Simpson maliciously said "Oh, I see you are here. After the Summer I thought you would quit."  Ms. Behringer replied that she had no intention of quitting.  (Pl. Stmnt. Point II-M).

**N.      2006 Christmas Party**

At Lavelle's Christmas party in December 2006, Mr. Simpson, aware that Ms. Behringer

is a recovering alcoholic and has a disability, repeatedly and maliciously harassed her because of her disability, offering her alcoholic beverages and saying "Can I get you a drink?"  Ms. Behringer declined.  (Pl. Stmnt.  Point II-N).

**O.      January 2007 Unfounded And Uncalled-For Warning**

On or about January 3, 2007, Mr. Simpson gave Ms. Behringer a frivolous and uncalled-for "warning" as a further act of discrimination, harassment and retaliation.  Plaintiff then requested access to her personnel file, to which she was entitled, only to be told her file was lost. (Pl. Stmnt. Point II-O).

**P.      Other Incidents**

From the Fall of 2006 forward, Mr. Simpson was rude to Plaintiff.  He would enter a room and not acknowledge Plaintiff.  This occurred more than 50 times.  He spoke to Plaintiff in a condescending, threatening tone.  This occurred about 90 times.  He treated her with contempt about 10 or 15 times.  He also gave her assignments, then told Plaintiff he did not give the assignment in the manner previously dictated.  (Pl. Stmnt. Point II-P).

**Q.      Termination Of Employment**

On February 28, 2007, the anniversary of the death of Ms. Behringer's father, Defendants suddenly and unlawfully discharged Ms. Behringer's employment.  Defendants issued a termination memorandum to Ms. Behringer, dated February 28, 2007, falsely stating: "Your behavior in the work environment is unacceptable."  (Pl. Stmnt. Point II-Q).

**R.      EEOC Charge**

In April 2007, Plaintiff filed a timely charge of discrimination, harassment and retaliation with the EEOC.  Defendants received a copy of the EEOC Charge.  (Pl. Stmnt. Point II-R).

8

**S.**   <u>**Defendants' Statements To EEOC About Plaintiff's Disability**</u>

During the EEOC proceedings in 2007 and 2008, Defendants repeatedly asserted to

EEOC that Defendant Frank Simpson was unaware that Plaintiff is a recovering alcoholic until

June 2006, when Plaintiff told him that she is a recovering alcoholic.  (Pl. Stmnt. Point II-S).

**T.**   <u>**Defendants' Statements About Plaintiff's Discharge**</u>

In Defendants' November 2007 EEOC submission, which Mr. Simpson signed and filed

with EEOC, Defendants alleged that Plaintiff was fired for "unacceptable work behavior in

several areas over 6 six years."  In Defendants' May 2007 EEOC submission, Mr. Simpson

asserted that Plaintiff "was discharged for a pattern of legitimate, non-discriminatory reasons",

which according to Mr. Simpson included (1) chronic lateness to school; (2) chronic failure to

punch in and out; (3) misuse of school telephone; (4) failure to work as an effective

administrative team member; (5) misrepresenting facts regarding the Destiny incident; (6)

unprofessional interaction with personnel; and (7) loss of credibility.  (Pl. Stmnt. Point II-T).

**U.**   <u>**Mr. Simpson's Explanation For Discharge In Deposition**</u>

During Mr. Simpson's deposition, Mr. Simpson testified that the sole reason he fired

Plaintiff was for allegedly "inappropriately reporting a staff member gawking at a young girl

rolling around on the floor naked from the waist down getting a suppository and inappropriately

and inaccurately reporting that."  The date of the alleged incident is February 13, 2007. This is

completely untrue.  (Pl. Stmnt. Point II-U).

**V.**   <u>**Mr. Simpson's Explanation Is Pretextual**</u>

Mr. Simpson's explanation in deposition for firing Plaintiff is a pretext for discrimination

and retaliation.  Plaintiff did nothing wrong on February 13, 2007.  She intervened to protect the

9

privacy and safety of a female student named Destiny and she gave instructions to a staff member

that was standing too close to Destiny with a male student, all of which was standard procedure

for a Principal.  On February 13, 2007, Destiny was in the gym and was having a tantrum in the

gym.  During this tantrum, Destiny pulled down her pants and underwear (pull-up diaper) and her

buttocks were visible. Ms. Behringer intervened in the situation in the gym on February 13, 2007

involving Destiny and her tantrum.  It was proper and routine for Ms. Behringer to do so as

Lower School Principal. At the time that Destiny was having a tantrum in the gym, there were

other staff members in the gym, including Francis (Paco) Secada.  Mr. Secada was with a male

student named Orlando.  Paco and Orlando were in close proximity to Destiny and they were

both facing Destiny while she was having a tantrum and was pulling down her pants and

underwear. The two of them were looking at Destiny's buttocks.  Ms. Behringer politely and

repeatedly asked Paco to take his student (Orlando) out of the vicinity.  It was completely proper

for Ms. Behringer to do so.  Plaintiff did not yell, scream or raise her voice to Mr. Secada.  At

that point, the matter was resolved.  This took 5-10 minutes at most.  Ms. Behringer did not

engage in any improper behavior.  At all times, her conduct was appropriate for the situation.  On

February 14, 2007, Gary Wier (Mr. Secada's supervisor) sent an email to Plaintiff, stating that

Mr. Secada apologized for his actions on February 13, 2007.  Mr. Wier gave a copy of this email

to Mr. Simpson and, thus, Mr. Simpson knew that Mr. Secada had acted inappropriately on

February 13, 2007.  Plaintiff did not file a formal report or formal complaint about the events of

February 13, 2007 and did not seek disciplinary action against Mr. Secada or any staff member.

She did not file any "false report" regarding the matter.  (Pl. Stmnt. Point II-V).

**W.**     **Defendants' Change Of Story Regarding Plaintiff's Disability**

For this lawsuit, Defendants changed their story as to Mr. Simpson's alleged knowledge

of Plaintiff's status as a recovering alcoholic.  As noted above, during the EEOC proceedings in

2007 and 2008, Defendants repeatedly represented to EEOC that Simpson did not know Plaintiff

was a recovering alcoholic until she told him so in June 2006.  In 2008, when Defendants filed

their Answer to the lawsuit Complaint, Defendants changed their story, alleging for the very first

time that "Simpson was aware that plaintiff was a recovering alcoholic prior to the spring of

2006."  Mr. Simpson made that argument in his deposition.  Thus, Defendants directly

contradicted their prior written and signed submissions to EEOC.  (Pl. Stmnt. Point II-W).

**X.**     **Defendants' Change Of Story Regarding Plaintiff's Discharge**

Defendants changed their story with respect to Defendants' alleged reason for firing

Plaintiff.  During the EEOC proceedings in 2007, Mr. Simpson repeatedly alleged in his written

and signed EEOC submissions that he fired Plaintiff because of six years of alleged ongoing

unacceptable job performance.  However, when Mr. Simpson was deposed in 2010, Defendants

changed their story.  Mr. Simpson testified that the sole reason he fired Plaintiff was for a single

alleged incident--allegedly "inappropriately reporting a staff member gawking at a young girl

rolling around on the floor naked from the waist down getting a suppository and inappropriately

and inaccurately reporting that."  This testimony contradicted Defendants' EEOC submissions.

(Pl. Stmnt. Point II-X).

**ARGUMENT**

**POINT ONE**

**THE RIGOROUS STANDARD FOR A MOTION FOR SUMMARY JUDGMENT**

The Second Circuit has "repeatedly expressed the need for caution about granting

summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent." Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008); Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) ("where a defendant's intent and state of mind are placed in issue, summary judgment is ordinarily inappropriate"). This Court does not attempt to resolve disputed issues of fact; rather the Court must simply assess whether there are factual issues to be tried.  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).  This Court must resolve all ambiguities and draw all reasonable inferences in Plaintiff's favor and against Defendants.  Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). Therefore, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 151 (2000).

Statements made by a decision-maker can be legally sufficient evidence to deny summary judgment.  Tomassi v. Insignia Financial Group, Inc., 478 F. 3d 111, 116  (2d Cir. 2007). Further, a plaintiff's affidavit or deposition testimony alone can be the basis for denying summary judgment to a defendant. Fincher v. Depository Trust, 2010 WL 1931637 at *10 (2d Cir.) (a district court may not discredit as ipse dixit plaintiff evidence that is the sole support for a question of fact regarding inference of discrimination); Fed. R. Civ. P. 56(e).

Because direct evidence of discrimination – "a smoking gun"– is typically unavailable in employment discrimination actions, circumstantial evidence is sufficient to deny summary judgment. Holcomb, 521 F.3d 130, 141.  Such evidence may include affidavits and depositions, "which must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination."  Gallo v. Prudential Residential Services, 22 F. 3d 1219, 1224 (2d Cir. 1994).

12

## POINT TWO

## THE STANDARDS UNDER THE ADA, NYSHRL AND NYCHRL

"The ADA prohibits discrimination against a 'qualified individual with a disability because of the disability' in the 'terms, conditions, and privileges of employment.' 42 U.S.C. § 12112(a)." Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005).[1]  Unlawful discharge and hostile work environment/harassment are actionable under the ADA.  See, e.g., McBride v. Bic Consumer Prd., 583 F.3d 92, 96 (2d Cir. 2009) (discharge); McCowan v. HSBC Bank USA, N.A., 2010 WL 550235 at *1 (E.D.N.Y.) (Bianco, J.) (allowing ADA hostile work environment claim to go to jury).  The same legal standards that govern Plaintiff's ADA claims also govern her NYSHRL claims.  Parker v. Columbia Pictures Industries, 204 F. 3d 326, n.1 (2d Cir. 2000).

Defendants mis-state that the NYCHRL is analyzed under the same standards. (Def. Br. at 14, n. 7). Since its amendment by the Local Civil Rights Restoration Act of 2005, the NYCHRL is no longer coextensive with the ADA or NYSHRL and now must be given its own independent and liberal construction.  Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (NYCHRL disability-based protections greater than under federal law), citing Williams v. N.Y. City Hous. Auth., 61 A.D.3d 62, 66 (1st Dep't 2009), lv. denied 3 N.Y.3d 702 (2009) (federal "severe or pervasive" standard does not apply to NYCHRL hostile work environment claims); Weiss v. JPMorgan Chase & Co., 2010 WL 114248 (S.D.N.Y.) (Cote, J.) (NYCHRL age-based protections greater).

---

[1]Plaintiff's claims arose prior to the effective date of The ADA Amendments Act of 2008, which substituted "on the basis of disability" for "with a disability because of the disability of such individual". Pub.L. 110-325, §§ 5(a)(1), 8.

Claims of employment discrimination under the ADA, NYSHRL and NYCHRL proceed under the McDonnell Douglas burden-shifting analysis.  See, e.g., Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998) (ADA).  In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show (1) that her employer is subject to the ADA; (2) that she is disabled within the meaning of the ADA or perceived to be so by her employer; (c) that she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that she suffered an adverse employment action because of her disability.  Brady v. Wal-Mart, 531 F.3d 127, 134 (2d Cir. 2008).  As discussed below, all elements are fully established here. Further, Plaintiff has presented evidence that Defendants' proffered reason for its actions is pretext for unlawful discrimination and termination. See e.g.,  Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1113 (2d Cir.1988) (plaintiff may prevail at trial if employer's asserted neutral basis unworthy of credence); Matter of Classic Coach v Mercado, 280 A.D.2d 164, 169 (2d Dept. 2001), lv. denied 97 N.Y.2d 601 (NYSHRL requires showing of falsity of pretext and no more).

## POINT THREE

### THE COURT SHOULD DENY DEFENDANTS' MOTION REGARDING PLAINTIFF'S CLAIMS OF DISABILITY DISCRIMINATION

**A.**   **Plaintiff Was Fully Qualified For Her Position**

The Court should deny Defendants' motion regarding Plaintiff's claims of disability discrimination.  Plaintiff establishes all elements of her claims.  First, Plaintiff was fully qualified for her position.  This is reflected by her numerous performance evaluations and other documents confirming her outstanding job performance, and even Defendant Simpson's own testimony that

Plaintiff was in good standing as of April 2006 and December 2006.  (Pl. Stmnt. Points II-B, C, I and N). It is not disputed that Plaintiff was employed by a covered employer.

**B.**     **Plaintiff Is Disabled Within The Meaning Of Applicable Law**

Second, Plaintiff is disabled within the meaning of applicable law.  Defendants argue that Plaintiff is not disabled under the ADA.  (Def. Br. Point II-C, pp. 16-18).  Defendants' argument is frivolous.  Plaintiff is a recovering alcoholic.  This is corroborated by (1) Plaintiff's testimony; (2) Plaintiff's medical records; and (3) witnesses that were aware of Plaintiff's condition.  (Pl. Stmnt. Point II-J).  As a matter of law, in the Second Circuit an employee that is a recovering alcoholic has a record of a disability and is disabled within the meaning of the ADA, NYSHRL and NYCHRL.  Buckley v. Consolidated Edison Co., 127 F.3d 270, 273-275 (2d Cir. 1997), vacated on other grounds on reconsideration en banc, 155 F. 3d 150 (2d Cir. 1998) (recovering alcoholic is "automatically covered under [42 U.S.C. § 12102(1)(B) as currently codified] for having a record of drug addiction") ; see also Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 48 (2d Cir. 2002), cert. denied 537 U.S. 813 (2002) (recovering alcoholics "qualify under [42 U.S.C. § 12102(1)(B) as currently codified] because they have a record of having an impairment").  Defendants ignore Buckley and provide no controlling authority to the contrary, citing among others an Eastern District of New York opinion issued the same year as Buckley, a Southern District of Texas opinion that makes the same argument as did the dissent in Buckley but which the Buckley majority opinion rejected, and a District of Maine opinion that is clearly distinguishable on the facts.

**C.**     **Plaintiff Disclosed Her Disability To Defendant Simpson In Or About June 2006, As Confirmed By Plaintiff And Defendants' Own EEOC Submissions**

15

Third, Plaintiff has created an inference of unlawful discrimination and termination and presented evidence that Defendants' proffered reason for its actions is pretext for unlawful discrimination and termination. This evidence mandates denial of Defendants' motion.

As detailed in Plaintiff's Statement, in or about June 2006, Plaintiff disclosed her disability to Defendant Simpson. This is when he first learned of that condition.  This fact is corroborated by Plaintiff's testimony, Defendants' Simpson's repeated written representations to EEOC in 2007 that he did not know Plaintiff was a recovering alcoholic until she told him in June 2006, and EEOC interviews of Defendants' witnesses Lorrie Nanry and Diane Tucker, who corroborated Simpson's lack of prior knowledge.  (Pl. Stmnt. Point II-J; Pl. Stmnt. Point II-T).

Defendants cannot disavow their repeated statements to EEOC that Mr. Simpson did not know Plaintiff was a recovering alcoholic until she told him in June 2006.  The EEOC's investigatory memoranda are highly probative and admissible evidence for purposes of opposing Defendants' motion for summary judgment.  See Hamilton v. Niagara Frontier Transportation Authority, 2008 WL 4724324 at *3-4 (W.D.N.Y.) (Schroeder, M. J.) (material and testimony relating to DOL investigation are highly probative and presentable to jury); see also, e.g., Murphy v. General Elec. Co., 245 F. Supp. 2d 459, 467 (N.D.N.Y. 2003) (Homer, M. J.), citing Paolitto v. John Brown E. & C. Inc., 151 F.3d 60, 64 (2d Cir.1998) (EEOC findings regarding age discrimination considered on summary judgment motion); Garcia v. Gloor, 618 F.2d 264, 272 (5th Cir.1980) ("[t]he district judge was, indeed, in error in refusing to admit the investigative report and determinations of the EEOC").

Defendants have changed their story for this litigation in two major respects: (1) Defendants repeatedly stated to EEOC in 2007 and 2008 that Mr. Simpson did not know Plaintiff

16

was a recovering alcoholic until she told him in 2006, but after this lawsuit was filed, Defendants changed their story to allege Mr. Simpson knew Plaintiff was a recovering alcoholic years before her disclosure; and (2) Defendants repeatedly alleged to EEOC that Plaintiff was fired because of six years of unsatisfactory job performance, but after this lawsuit was filed, Defendants changed their story to allege that Plaintiff was fired solely because of a single alleged incident on February 13, 2007 involving a female student (Destiny) having a tantrum in the school gym.

Defendants' change of story is evidence of pretext and mandates denial of Defendants' motion for summary judgment. Carlton v. Mystic Transp. Inc., 202 F. 3d 129, 137 (2d Cir. 2009) (employer's deposition testimony contradicts EEOC statement); Binder v. Long Island Lighting Co., 933 F.2d 187, 193-194 (2d Cir. 1991) ("the district court erred when it refused to consider defendant's EEOC position statement" that contradicts other statements); see also E.E.O.C. v. Town of Huntington, 2008 WL 361136 at *8 (E.D.N.Y.) (Hurley, J.) (supervisor's deposition testimony contradicts defendant's earlier EEOC position statement ); Jackson v. Ebasco Servs. Inc., 634 F. Supp. 1565, 1571-1573 (S.D.N.Y. 1986) (Sprizzo, J.) (supervisor's factual assertion of employee evaluation procedures contradicts employees' testimony).

**D.    Plaintiff Was Subjected To Adverse Employment Actions Under Circumstances Giving Rise to An Inference of Disability Discrimination**

Fourth, Plaintiff was subjected to adverse employment actions under circumstances giving rise to an inference of disability discrimination.  Defendants argue that Defendants terminated Plaintiff because Plaintiff "falsely reported what was tantamount to abuse of [a] female student in claiming that she was 'naked from the waist down' receiving a rectal suppository in plain view of several employees and 2 students." (Def. Br. at 19; Pl. Stmnt. Point

17

II-U).  To the contrary, Defendants' proffered reason for firing Plaintiff – which is a change of story from Defendants' repeated statements to EEOC – is a pretext for unlawful discrimination and unlawful termination of employment. (Pl. Stmnt. Point II-J through Pl. Stmnt. Point II-X).

As detailed in Plaintiff's Statement, Plaintiff did not engage in any improper conduct with respect to the "female student" and Plaintiff did not file any "false report."  Rather, on February 13, 2007, a female student named Destiny had a tantrum in the school gym and Plaintiff properly intervened to protect the student, which included giving directions to a male staff member named Francis (Paco) Secada, who was standing too close to Destiny with a male student.  Before Mr. Simpson unlawfully fired Plaintiff, he knew that Plaintiff had acted properly with respect to Destiny because, among other items: (1) Mr. Simpson interviewed Plaintiff; (2) Mr. Simpson interviewed staff members that confirmed that Destiny had a tantrum and pulled down her pants in the gym; and (3) Mr. Simpson received a copy of an email that witness Gary Wier had sent to Plaintiff, acknowledging that Mr. Secada's actions on February 13, 2007 were inappropriate and that Mr. Secada had apologized for his behavior.  (Pl. Stmnt. Point II-V).

There is a strong causal connection between Plaintiff's disclosure of her status as a recovering alcoholic and the termination of her employment, as shown by several facts.

First, Defendants fired Plaintiff only eight months after Plaintiff disclosed that she is a recovering alcoholic.  (Pl. Stmnt. Points II-J, II-Q).  The temporal proximity between Plaintiff's protected actions and subsequent discriminatory or retaliatory conduct gives rise to an inference of discrimination sufficient to deny Defendants' motion for summary judgment. The Second Circuit has not drawn "a bright line" to define how long is too long to establish a causal connection between a protected activity and alleged retaliation. Here, Defendants took advantage

18

of an "opportune moment" to fire Plaintiff -- an alleged incident in the school gymnasium from

which Defendants could fabricate false accusations against Plaintiff of "improper behavior" and

terminate her employment.  There is a clear causal connection from the facts of this case.  (Pl.

Stmnt. II-U, II-V).  Espinal v. Goord, 558 F.3d 119, 129  (2d Cir. 2009) (retaliation delayed to

opportune time; event and adverse action 6 months apart); Grant v. Bethlehem Steel Corp., 622

F2d. 43, 45-6 (2d Cir. 1980) (retaliation delayed to opportune time; event and retaliation 8

months apart); Allen v. J.P. Morgan Chase & Co., 2009 WL 857555 (S.D.N.Y.) (Koeltl, J.)

(adverse action 6 months after initial complaint and 4 months after filing of EEOC Charge);

McKenzie v. Nicholson, 2009 WL 179253, at *5, n.5 (E.D.N.Y.) (Bianco, J.) (adverse action 1

year after filing EEO complaint); Quinby v. WestLB AG, 2007 WL 1153994, at *13 (S.D.N.Y.)

(Pauley, J.) (event and adverse action 8 months apart); Fruchter v. Sossei, 1996 WL 640896, at

*4 (S.D.N.Y.) (Sand, J.) (November 1994 filing of civil complaint and March 1995 performance

evaluation); see also Fabela v. Socorro Independent School District, 329 F. 3d 409 (5th Cir. 2003)

(1997 termination for filing EEOC Charge in 1991).

     Second, Defendants escalated unlawful conduct against Plaintiff after she disclosed that

she is a recovering alcoholic to Defendant Simpson.  Mr. Simpson engaged in unlawful conduct

against Plaintiff in the Summer of 2006, the Fall of 2006, the Winter of 2006, and January 2007,

apparently to coerce Plaintiff's resignation.  (Pl. Stmnt. Points II-J through II-P).

     Third, when Plaintiff declined to resign, Mr. Simpson escalated the unlawful conduct and

fired Plaintiff on February 28, 2007, at an "opportune moment" without even providing an

explanation for the alleged discharge. (Pl. Stmnt. Points II-Q through II-X).  Mr. Simpson then

repeatedly represented in writing to EEOC in 2007 that Plaintiff was fired for six years of

19

unsatisfactory job performance, and then changed his story after this lawsuit was filed in 2008, to allege that Plaintiff was fired solely because of the alleged incident on February 13, 2007 involving the female student Destiny.  The inconsistent and/or post-hoc explanation for the discharge underscore the discriminatory motive.  Weiss v. JPMorgan Chase & Co., 332 Fed.Appx. 659, 663 (2d Cir. 2009) (summary order), citing Carlton, 202 F.3d 129, 137 (2d Cir. 2000) and EEOC v. Ethan Allen, Inc., 44 F.3d 116, 120 (2d Cir. 1994) (employer gives multiple explanations of reasons for termination to employee).

Plaintiff did nothing wrong on February 13, 2007.  She intervened to protect the privacy and safety of a female student (Destiny), she gave instructions to a staff member (Francis (Paco) Secada) that was standing too close to Destiny with a male student, all of which was standard procedure for a Principal.  (Pl. Stmnt. Point II-V).  Ms. Behringer did not engage in any improper behavior.  At all times, her conduct was appropriate for the situation.  On February 14, 2007, Mr. Wier (Mr. Secada's supervisor) sent an email to Plaintiff, stating that Mr. Secada apologized for his actions on February 13, 2007.  Mr. Wier gave a copy of this email to Mr. Simpson and, thus, Mr. Simpson knew that Mr. Secada had acted inappropriately on February 13, 2007.  Plaintiff did not file a formal report or formal complaint about the events of February 13, 2007 and did not seek disciplinary action against Mr. Secada or any staff member.  Plaintiff did not file any "false report" regarding any matter.  (Pl. Stmnt. Point II-V).

Contrary to Defendants' arguments, Defendants did not "reasonably, and in good faith" rely upon a report of misconduct in terminating Plaintiff.  (Def. Br. at 19).  Defendants are not insulated from scrutiny by mere allegations of good faith.  Weiss, 332 Fed.Appx. 659, 663; see also Dister, 859 F.2d 1108, 1116.  Nor is Plaintiff required to demonstrate bad faith in the form

20

of direct evidence of discriminatory animus; she may prove discriminatory animus through

circumstantial evidence. Weiss, 332 Fed.Appx. 659, 663, citing Reeves, 530 U.S. 133, 141. Here,

Defendant Simpson targeted Plaintiff for unlawful termination after Plaintiff exercised her

FMLA rights and complained about the violation of those rights, and after she disclosed to

Defendant Simpson that she is a recovering alcoholic.  Defendants did not act in good faith

because before Mr. Simpson unlawfully fired Plaintiff, he knew that Plaintiff had acted properly

with respect to Destiny because, among other items: (1) Mr. Simpson interviewed Plaintiff; (2)

Mr. Simpson interviewed staff members that confirmed that Destiny had a tantrum and pulled

down her pants in the gym; and (3) Mr. Simpson received a copy of an email that witness Gary

Wier had sent to Plaintiff, acknowledging that Mr. Secada's actions on February 13, 2007 were

inappropriate and that Mr. Secada had apologized for his behavior.  Mr. Simpson knew that

Plaintiff acted properly on February 13, 2007 and Mr. Simpson knew that she did not file any

"false report."  She simply advised Gary Wier, the supervisor of Francis (Paco) Secada, of the

events in the gym on February 13, 2007.  (Pl. Stmnt. Point II-V).

## POINT FOUR

## THE STANDARDS UNDER THE FMLA

The FMLA prohibits an employer from interfering with an employee's right to exercise

her rights under the FMLA. 29 U.S.C. § 2615. An interference claim includes retaliation and is

evaluated under the McDonnell Douglas rubric . Potenza v. City of New York, 365 F.3d 165,

167-8 (2d Cir. 2004).  To make out a prima facie case, plaintiff must prove that (1) she was

qualified for the job at the time of the adverse employment action; (2) she was subjected to an

adverse employment action; (3) she exercised her FMLA rights; and (4) the adverse employment

21

action occurred under circumstances raising a reasonable inference of retaliatory intent. Id. If plaintiff establishes a prima facie case, defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action. Plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

## POINT FIVE

### PLAINTIFF ESTABLISHED HER CLAIM OF VIOLATION OF THE FMLA

**A.**     **Plaintiff Established The Elements Of Her Claim**

Plaintiff has established the elements of her claim of violation of the FMLA.

Plaintiff was entitled to and asserted her rights to take FMLA leave. Defendant harassed Plaintiff because she took FMLA leave. As noted above, in November 2005, Defendant Simpson harassed Plaintiff regarding her FMLA leave, including among other items harassing Plaintiff regarding how she spent her time on non-FMLA days, knowing Plaintiff was properly taking FMLA days to care for her dying father. This harassment was confirmed by Mr. Simpson's November 23, 2005 memorandum to Plaintiff. In December 2005, Plaintiff filed at least two protected complaints of violations of her FMLA rights, a written complaint on December 15, 2005 and a verbal complaint on December 21, 2005 to Defendants' then counsel. Defendants did not investigate or take any remedial action in response to Plaintiff's complaints. Rather, Defendants retaliated against Plaintiff for exercising her FMLA rights and complaining about violations of those rights. (Pl. Stmnt. Point II-F). In January 2006, Defendants gave Plaintiff a performance evaluation that raised false criticisms of her job performance, placing her job in jeopardy and setting her up for discharge. (Pl. Stmnt. Point II-G). Mr. Simpson engaged in acts

22

of discrimination, harassment and retaliation against Plaintiff in the Summer fo 2006, Fall of 2006, Winter of 2006, and January of 2007.  (Pl. Stmnt. Points II-K through II-O).  Finally, on February 28, 2007, Defendant Simpson unlawfully terminated Plaintiff's employment on false accusations, accusations that Mr. Simpson knew were false. (Pl. Stmnt. Points II-U to II-V).

**B.      Defendants' Arguments Add Nothing**

Defendants argue that Plaintiff has received all of the FMLA leave to which she was entitled and, therefore, that there is no FMLA claim.  (Def. Br. 20-21).  Defendants' argument makes no sense.  Plaintiff was subjected to adverse employment action because she exercised her rights under the FMLA to take leave and because she complained about violations of her FMLA rights, in violation of 29 U.S.C. § 2615.  (Pl. Stmnt. Points II-F through II-X).

Defendants next argue that there was no adverse employment action against Plaintiff occurring under circumstances giving rise to an inference of retaliation.  (Def. Br. 21-22).  This is directly contradicted by the facts outlined herein and in Plaintiff's Statement.

Defendants argue that Mr. Simpson was entitled to question Plaintiff's usage of FMLA leave.  (Def. Br. 22).  While an employer could conceivably question in good faith an employee's usage of FMLA leave, an employer cannot establish good faith where, as here, the employer is challenging the employee's activities on non-FMLA days.  (Pl. Stmnt. Point II-F).

Defendants falsely argue that Defendants rescinded the January 2006 evaluation three months later.  (Def. Br. 22).  According to Defendant Simpson, the evaluation was never rescinded. Rather, he retained that in his files and simply gave Plaintiff a subsequent evaluation for January - April 2006.  (Pl. Stmnt. Point II-G).  Thus, Defendants are wrong.

Defendants argue that there is no causal connection between Plaintiff's exercise of FMLA

23

rights and complaint of FMLA violations in 2005 and the termination of her employment in February 2007. To the contrary, and as detailed above, there is a strong causal connection between Plaintiff's exercise of FMLA rights and complaints of violation of her FMLA rights and Defendants' adverse employment actions against Plaintiff. (Pl. Stmnt. Points II-F through II-X).

**POINT SIX**

**PLAINTIFF ESTABLISHED HER CLAIM OF DISABILITY HARASSMENT**

Plaintiff established her claim of disability-based harassment. The ADA allows hostile work environment claims. McCowan, 2010 WL 550235 at *1. "'[A]ppalling conduct alleged in prior cases should not be taken to mark the boundary of what is actionable.'" Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000) (quoting Richardson v. N.Y.S. Dept. of Corr., 180 F.3d 426, 439 (2d Cir. 1999)); Ribis v. Mike Barnard Chevrolet-Cadillac, Inc., 468 F. Supp.2d 489, 501-06 (W.D.N.Y. 2007) (Larimer, J.) (denying defendant's summary judgment motion on hostile work environment claims). Consideration of the severity, pervasiveness or other factors must be considered in the light most favorable to Plaintiff. Aulicino v. N.Y.C. Dept. of Homeless Services, 580 F.3d 73, 83 (2d Cir. 2009).

Defendants also ignore the broad and liberal harassment standard of the NYCHRL, which is independent of federal standards and must be assessed separately. Williams v. N.Y. City Hous. Auth., 61 A.D.3d 62, 76 (1st Dep't 2009), lv. denied 3 N.Y.3d 702 (2009) (NYCHRL has no "severe" or "pervasive" requirement for liability purposes); accord Panzarino v. Deloitte & Touche LLP, 2009 WL 3539685, at *9, (S.D.N.Y.) (Jones, J.) ("less egregious conduct than that required under [federal law] may support a hostile work environment claim under the NYCHRL"). Here, as detailed above, Plaintiff was subjected to several instances of disability-

24

based harassment after she disclosed to Defendant Simpson that she is a recovering alcoholic. (Pl. Stmnt. Points II-J through II-X).  These incidents are actionable harassment.

## POINT SEVEN

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S ADA RETALIATION CLAIM SHOULD BE DENIED BECAUSE PLAINTIFF'S CLAIM IS PROPERLY PLEADED

Defendants' motion to dismiss a putative disability-based 42 U.S.C. § 12203(a) claim should be denied because no such claim was made. The issue could have been disposed of at the pre-motion conference. Plaintiff's claim falls under 42 U.S.C. § 12203(b). Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778 (3d Cir. 1998); Reg. Econ Cmty., 294 F.3d 35, 54 (§ 12203(b) claims are "claims of retaliation").  Defendants coerced, intimidated and/or interfered with Plaintiff on account of her "having exercised or enjoyed" her rights to be free from discrimination on the basis of her status as a recovering alcoholic and Plaintiff's claim is properly pleaded. 42 U.S.C. § 12203(b); Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510-13 (2002). The incidents are outlined above.  (Pl. Stmnt. Points II-J to II-X).

## CONCLUSION

The Court should deny Defendants' motions for summary judgment and to dismiss in their entirety.  Plaintiff requests an award of attorneys' fees and costs incurred on this motion.

Dated: New York, New York
       May 25, 2010

GOLDBERG & FLIEGEL LLP
By:   /s/ Kenneth A. Goldberg
      Kenneth A. Goldberg (KG 0295)
      60 East 42nd Street
      New York, New York 10165
      (212) 983-1077
      Attorneys for Plaintiff