UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELEANOR ("RONNIE") BEHRINGER,<br><br>Plaintiff,<br><br>-against-<br><br>LAVELLE SCHOOL FOR THE BLIND and FRANK SIMPSON,<br><br>Defendants. | Civil Action No.: 08-4899 (JGK-THK) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE
PLAINTIFF'S EXPERT REPORT AND EXPERT TESTIMONY**

DATED:  March 14, 2011

KELLEY DRYE & WARREN LLP
Jean Y. Park (jpark@kelleydrye.com)
101 Park Avenue
New York, New York 10178
Tel:  (212) 808-5019
Fax:  (212) 808-7897
  *Attorneys for Defendants*
  *Lavelle School for the Blind and Frank Simpson*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELEANOR ("RONNIE") BEHRINGER,<br><br>                    Plaintiff,<br><br>-against-<br><br>LAVELLE SCHOOL FOR THE BLIND and FRANK SIMPSON,<br><br>                    Defendants. | Civil Action No.: 08-4899 (JGK-THK)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE PLAINTIFF'S EXPERT REPORT AND EXPERT TESTIMONY** |

Pursuant to Rule 702 of the Federal Rules of Evidence, Defendants Lavelle School for the Blind ("Lavelle" or the "School") and Frank Simpson ("Simpson") submit this memorandum of law in support of their Motion *in limine* to exclude the testimony and report of Steven M. Kaplan, plaintiff's designated expert witness on back pay and front pay damages in this action (hereinafter, the "*Daubert* Motion").

## PRELIMINARY STATEMENT

Rule 702 of the Federal Rules of Evidence is aimed at "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Mr. Kaplan's January 19, 2009 report (the "Kaplan Report"), on its face, fails to satisfy this relevance and reliability standard for admissible expert testimony and should be excluded from evidence.

First, Mr. Kaplan's opinions are entirely speculative and not supported by facts or data sufficient to form the basis of a legitimate expert opinion. Mr. Kaplan bases his entire calculation of plaintiff's economic damages on the assumption that plaintiff would have received a four percent salary increase at Lavelle every year for 21 years following her 2007 termination. As set forth herein, these assumptions are, in fact, erroneous. Contrary to what the Kaplan

Report would have the Court (and a jury) to believe, Lavelle is almost entirely dependent upon state funding and froze the salaries of its principals in academic year 2009 – 2010 due to significant budgetary constraints.

Second, Mr. Kaplan's method for calculating plaintiff's alleged economic damages is unreliable. As explained below, Mr. Kaplan offers no explanation of his method or justification for his assumption of annual four percent salary increases. Additionally, Mr. Kaplan takes no account of Lavelle's finances or any other factors that might affect plaintiff's earnings potential at Lavelle, such as market data and salary caps. As such, Mr. Kaplan's method does not rise to the level of reliability required of expert testimony under *Daubert*.

Finally, Mr. Kaplan's testimony and report should be excluded as irrelevant because they would not assist the jury in understanding or determining any fact in issue. Mr. Kaplan's method for calculating plaintiff's alleged damages amounts to nothing more than a few simple calculations that a jury could easily perform without the aid of expert testimony. Plaintiff should not be allowed to cloak speculative lay opinions with the authority of expertise.

## ARGUMENT

### I. THE LEGAL STANDARD AND BURDEN OF PROOF

Rule 702 permits expert testimony that is based on "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence or to determine a fact in issue" and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702; *see also Mastercard Int'l Inc. v. First Nat'l Bank of Omaha, Inc.*, No. 02 Civ. 3691 (DLC), 03 Civ. 707, 2004 WL 326708, at *7 (S.D.N.Y. Feb. 23, 2004). Moreover, it is for plaintiff to carry the burden of

establishing the admissibility of her expert's proffered testimony by a preponderance of the evidence. *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 353 (S.D.N.Y. 2003).

The Court has an obligation to act as a "gatekeeper" to ensure the "reliability and relevancy of expert testimony" presented to the finder of fact. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see also Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 594-595 (1993) (the subject of inquiry under Rule 702 is the scientific validity and thus evidentiary relevance and reliability of the principles that underlie a proposed submission). *Daubert* identifies five non-exclusive factors as guidelines for the trial court's assessment of proposed expert testimony: (1) whether the theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the theory's operation; and (5) general acceptance within the relevant scientific community. *See Maurizip v. Goldsmith*, No. 96 Civ. 4332 (RPP), 2002 WL 535146, *4 (S.D.N.Y. Apr. 9, 2002).

The Kaplan Report does not meet the *Daubert* criteria for relevance or reliability and Mr. Kaplan's testimony and underlying report should be excluded.

## II. THE KAPLAN REPORT IS UNRELIABLE SPECULATION BASED ON INSUFFICIENT AND ERRONEOUS FACTS AND DATA

Under Rule 702, "expert testimony should be excluded if it is speculative or conjectural." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996). "Where lost future earnings are at issue, an expert's testimony should be excluded as speculative if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects." *Id.* "Admission of expert testimony based on speculative assumptions is an abuse of discretion." *Boucher*, 73 F.3d at 22.

The Kaplan Report's opinion on plaintiff's earnings potential at Lavelle is the epitome of speculation. By his own admission, Mr. Kaplan analyzed only plaintiff's 2006 and 2007 annual earnings at Lavelle, as reflected in plaintiff's Forms W-2. (*See* Rep. at 1.)[1] Based on nothing more than an ostensible comparison between plaintiff's earnings differential over these two calendar years, Mr. Kaplan assumes for purposes of his entire damages calculation that plaintiff would have received a four percent salary increase at Lavelle every year for the 21 years following her termination. (*See* Rep. at 2, "Ms. Behringer should have been receiving an estimate salary of $98,425, based upon assumed annual salary increases of 4% ... ."; Rep. Ex. 2.) Mr. Kaplan's assumption is entirely speculative, devoid of a factual basis. Lavelle is a non-profit school that operates almost entirely on state funding. (*See* Welsh Aff. at ¶ 4.)[2] Recent cuts in state funding have placed significant budgetary constraints on the School. Accordingly, Lavelle froze principal salaries for the 2009 – 2010 school year. (*Id.* at ¶¶ 8-9.) Thus, contrary to Mr. Kaplan's unsupported speculation that plaintiff would have received a four percent salary increase every year had she remained at the School, Lavelle principals received a zero percent salary increase in 2009 – 2010. (*Id.*) Furthermore, at present, no decision has been made for principal salaries for the 2011 – 2012 school year. (*Id.* at ¶ 10.)

These indisputable facts demonstrate just how unreliable and unrealistic Mr. Kaplan's opinions are. Under Rule 702, opinions based on "unrealistic assumptions," *Broucher*, 73 F.3d at 21, such as Mr. Kaplan's assumed annual four percent salary increase, must not be

---

[1] Numbers in parentheses prefixed by "Rep. at __" refer to pages in the January 19, 2009 report of Steven M. Kaplan, a copy of which is annexed as **Exhibit 1** to the March 14, 2011 Declaration of Jean Y. Park in support of the *Daubert* Motion.

[2] Numbers in parentheses prefixed by "Welsh Aff. at ¶ __" refer to paragraphs in the March 14, 2011 Affidavit of Teresa Welsh, submitted in support of the *Daubert* Motion.

given the imprimatur of expert testimony. *See, e.g., Macaluso v. Herman Miller, Inc.*, No. 01 Civ. 11496, 2005 WL 563169, **6, 8 (S.D.N.Y. Mar. 10, 2005) (Koeltl, J.) ("The conclusions drawn by the plaintiffs' expert ... must be disregarded because they were based on [] erroneous assumption[s] ... . [Plaintiff's expert's] analysis fails to meet [Rule 702's] standard [of admissibility] because it is based on incorrect factual assumptions that render all of his subsequent conclusions purely speculative."); *In re: Air Crash Disaster at New Orleans, Louisiana*, 795 F.2d 1230, 1234 (5th Cir. 1986) ("[W]e find an assumed 8% annual salary increase continuing over almost 40 years to be unsupported by the record and completely incredible.").

### III. THE KAPLAN REPORT IS NOT THE PRODUCT OF RELIABLE PRINCIPLES AND METHODS

In addition to being based on insufficient data and erroneous assumptions, Mr. Kaplan's opinions should be excluded because he provides no explanation or justification for his methodology or his "assum[ption of] annual salary increases of 4%" every year for the next 21 years had plaintiff remained at Lavelle. (*See* Rep. at 2, Ex. 2.). Indeed, the Kaplan Report is so lacking in explanation of its methodology that it is not even clear from the report that Mr. Kaplan based his erroneous four percent assumption on a review of plaintiff's 2006 and 2007 W-2s, the only relevant data Mr. Kaplan claims to have considered. In fact, nowhere in his report does Mr. Kaplan even mention the earnings that appear on plaintiff's 2007 W-2, $24,699.60 (*See* Park Decl. Ex. 3),[3] let alone explain how he used this figure to calculate plaintiff's projected salary increases for the next 21 years. Moreover, the Forms W-2 upon which Mr. Kaplan relied are based on calendar year (January through December). (*See* Park Decl. Exs. 2 and 3.) However,

---

[3] Numbers in parentheses prefixed by "Park Decl. Ex. __" refer to exhibits to the March 11, 2011 Declaration of Jean Y. Park in support of the *Daubert* Motion.

compensation adjustments at the School are made according to the academic calendar (September through June). (*See* Welsh Aff. at ¶ 7.) Mr. Kaplan offers no explanation as to how he derived plaintiff's annual salary, based on the academic calendar, by reference to her W-2s, which are based on calendar years. Simply put, the Kaplan Report's estimate of plaintiff's potential future earnings at Lavelle "is connected to existing data only by the *ipse dixit*" of Mr. Kaplan. *Dora Homes, Inc. v. Epperson*, 344 F. Supp. 2d 875, 887 (E.D.N.Y. 2004). Mr. Kaplan's utter failure to explain the basis for his methodology and assumptions prevents the Court from assessing his opinions under the factors set forth in *Daubert*. Accordingly, his testimony and report should be excluded as unreliable. *See, e.g., Dora Homes*, 344 F. Supp. 2d at 887 ("Equally troubling, Cignatta does not support his opinions with any methodology which the Court can analyze to determine whether his affidavit has the benchmarks of reliability which all expert testimony is required to satisfy."); *Lamela v. City of New York*, 560 F. Supp. 2d 214, 224 (E.D.N.Y. 2008) ("Derucher fails to explain what 'theories' he used in coming to his conclusions, preventing this Court from determining whether they are generally accepted by the engineering community.").

       It is no surprise that Mr. Kaplan offers no justification for his assumption of a four percent salary increase every year for 21 years since, as the facts demonstrate, such an assumption is misplaced. As noted above, principal salaries are not subject to any guaranteed increases. (*See* Welsh Aff. at ¶¶ 8-9.) However, Mr. Kaplan took no account of this or any other facts before speculating about plaintiff's earnings had she remained at Lavelle. Mr. Kaplan's failure to consider anything other than his erroneous four percent salary increase assumption in attempting to calculate plaintiff's potential future earnings at Lavelle further undermines the reliability of his opinions. *See, e.g., In re: Air Crash Disaster*, 795 F.2d at 1234 ("In reaching

[his estimate of potential future earnings], the economist looked solely at [decedent's] income in prior years, and he failed to consider either the limits on future expansion that the [decedent's] companies would encounter as they continued to grown in an already competitive industry; or the depressed state of the marine industry at the time of trial and its cyclical nature in general; or of the future personal choices [decedent] might make ... .") Accordingly, Mr. Kaplan's opinion does not rise to the "level of intellectual rigor that characterizes the practice of an expert in the relevant field," *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999), and should be excluded.

## IV. EVEN ASSUMING RELIABILITY, PLAINTIFF'S EXPERT TESTIMONY AND REPORT SHOULD BE EXCLUDED AS IRRELEVANT WITHIN THE MEANING OF *DAUBERT*

Even assuming, *arguendo*, the reliability of the Kaplan Report, this Court should exclude it because it is nothing more than lay testimony presented as expert testimony with no assistive value to any trier or fact. To be admissible, expert "testimony must be relevant not only in the sense that all evidence must be relevant ... but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 80 (1st Cir. 1998) (citing *Daubert*, 509 U.S. at 591-592).

As noted above, Mr. Kaplan's method for calculating plaintiff's earning potential at Lavelle is extraordinarily simple: assume a salary increase of four percent every year for 21 years until plaintiff's expected retirement age of 70. (*See* Rep. at Ex. 2.) Mr. Kaplan's method for calculating plaintiff's earning potential at her new employer, Cooperative Educational Services, is nearly identical: assume a salary increase of five percent every year until plaintiff's expected retirement age of 70. (*Id.*) Then, to calculate plaintiff's alleged damages, Mr. Kaplan

simply subtracts the difference between these two figures. (*Id.*) Such an uncomplicated method for calculating damages requires no expertise and, accordingly, Mr. Kaplan's testimony and report would be of no assistance to a jury. *See, e.g., Biondo v. City of Chicago*, No. 88 CV 3773, 2002 U.S. Dist. LEXIS 9816 (N.D. Ill. May 30, 2002). In *Biondo*, a group of firefighters sued Chicago alleging that the city discriminatorily failed to promote them when it used a race-standardized exam. The plaintiffs proffered the testimony of an expert to opine as to the damages resulting from their lost chance at promotion. The court, however, excluded the expert's testimony on the ground that it amounted to no more than simple calculations that a jury could perform itself:

> Garcia's approach to the juries' tasks of making the required individual determinations of each plaintiff's lost chances was simplistic and misleading: divide the number of jobs by the number of candidates for those jobs. The information as to the number of test-takers and the number of promotions from each CFD promotion test was presented as uncontested evidence. The jurors had all the information and means to perform the simple calculation Garcia used. The jurors did not need expert testimony for that.

*Id.* at *8.

As explained above, Mr. Kaplan's approach to calculating plaintiff's alleged damages is as simplistic as the approach of the expert in *Biondo*. Accordingly, Mr. Kaplan's testimony is unnecessary, not likely to assist the jury and should be excluded as irrelevant. *See, e.g., Schwab v. Philip Morris*, 449 F. Supp. 2d 992, 1134 (E.D.N.Y. 2006) ("Expert testimony should not merely reiterate arguments based on inferences that can be drawn by laypersons; those can properly be advanced by the parties in summation."); *In re: Rezulin*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) (expert testimony not admissible when it described lay matters which a jury is capable of understanding without an expert by simply drawing inferences from documents and

reciting facts); *Lippe v. Bairnco Corp.*, 288 B.R. 678, 687-88 (S.D.N.Y. 2003) (finding, among other reasons to exclude, that expert's testimony was nothing more than summation from witness stand).

## CONCLUSION

For the reasons set forth herein, this Court should grant Defendants' Motion to Exclude Plaintiff's Expert Report and Testimony.

Dated: New York, New York
March 14, 2011

KELLEY DRYE & WARREN LLP

By: _____
Jean Y. Park
101 Park Avenue
New York, New York 10178
Tel: (212) 808-5019
Email: jpark@kelleydrye.com
*Attorneys for Defendants
Lavelle School for the Blind and
Frank Simpson*